# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DAWARI DAN-HARRY, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> PNC BANK, NATIONAL ASSOCIATION, <br><br> Defendant. | Civil Action No. 1:17-cv-136 |

## MEMORANDUM OF PNC BANK, NATIONAL ASSOCIATION IN SUPPORT OF ITS MOTION TO DISMISS

Defendant, PNC Bank, National Association, ("PNC"), through its attorneys, has moved to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This memorandum is submitted in support of that motion.

## INTRODUCTION

Plaintiff filed his complaint against PNC in Providence County Superior Court. PNC removed the action based on both federal question and diversity. No motion to remand has been filed.

The four-count complaint alleges that PNC was the party that foreclosed on Plaintiff's mortgage and that in the process it (a) failed to record its contractual authority supporting its right to foreclose, purportedly in violation of R.I.G.L. § 34-11-34 (Count I), (b) failed to hold a face-to-face interview or to make a reasonable effort to arrange a face-to-face meeting with Plaintiff, purportedly in violation of a HUD regulation (24 CFR § 203.604(b)) which was allegedly incorporated by reference into the mortgage agreement (Counts II and III). Plaintiff also alleges that these two actions violated the Rhode Island Deceptive Trade Practice Act (Count IV). As set

1

forth below, Plaintiff's theories have no support in Rhode Island law, and PNC respectfully requests that they be dismissed.

## SUMMARY OF THE ARGUMENT

*First,* Rhode Island law and the Dan-Harry mortgage permitted PNC to conduct a valid foreclosure because it was the mortgagee at the time of the foreclosure. *Bucci v. Lehman Brothers Bank, FSB,* 68 A.3d 1069 (R.I. 2013). *See also Akalarian v. RBMG, Inc*. 2013 WL 3956942 (R.I. Super. July 25, 2013) (Rubine, J.) (rejecting "convoluted" argument that mortgagee must have power of attorney from loan's owner or holder to foreclose in Rhode Island). Plaintiff does not dispute that PNC was the mortgagee and in custody of the note. Complaint ¶ 35.

*Second,* while the law is unsettled as to some aspects of the scope of permissible mechanisms of private enforcement of HUD regulations generally, one rule is clear: borrowers may not state a cause of action seeking a private damages remedy after a completed foreclosure. *See, e.g., Christenson v. Citimortgage, Inc.,* No. 12-cv-02600, 2013 WL 5291947, at *7 (D. Colo. Sept. 18, 2013) (collecting cases for the proposition that there is no private right of action for alleged violation of HUD regulations); *Wells Fargo Home Mortg., Inc. v. Neal*, 398 Md. 705, 721, 922 A.2d 538, 547 (2007) ("*Neal*") (borrower may privately enforce HUD regulations only as a defense during the foreclosure process and not after the foreclosure is completed); *ABN AMRO Mortg. Grp., Inc. v. Tullar,* 770 N.W.2d 851, 2009 WL 1066511 at *3 (Iowa Ct. App. 2009) (allowing offensive use of HUD regulations would "be allowing a private right of action by the backdoor") (citing *Neal,* 922 A.2d at 543-44, 546).

Based on these two principles, Plaintiff's other legal theories (good faith and fair dealing, deceptive practices) also must fail.

## STANDARD OF REVIEW

The dismissal of a complaint for failure to state a claim is governed by Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dismissal is required "if the complaint does not set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Lemelson v. U.S. Bank Nat. Ass'n,* 721 F.3d 18, 21 (1st Cir. 2013) (citations omitted). In determining whether a motion to dismiss should be granted, the Court considers whether, "construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted." *Ocasio–Hernandez v. Fortuno–Burset*, 640 F.3d 1, 8 (1st Cir. 2011). Under federal pleading standards, however, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

## RELEVANT FACTUAL ALLEGATIONS IN THE COMPLAINT

Plaintiff owned property located at 84 Corinth Street, Providence. (Complaint ¶ 31). Plaintiff borrowed $203,000.00 from Commonwealth United Mortgage, a Division of National City Bank of Indiana, which was secured by a mortgage on the Plaintiff's Property (the "Dan-Harry Mortgage"). Plaintiff executed a note in conjunction with the loan (the "Dan-Harry Note."). (Complaint ¶ 31).

Plaintiff alleges that all "right title and interest" in the Dan-Harry Note was "pooled, sold, and otherwise transferred to" Government National Mortgage Association ("Ginnie Mae") as part

of a pool of loans that were securitized. (Complaint ¶34). Plaintiff further alleges that Ginnie Mae legally became the "holder" of the note. (*Id.*).[1]

On December 31, 2008, PNC acquired National City, became the mortgagee under the Dan-Harry Mortgage and assumed document custody duties for the Dan-Harry Mortgage and Note. (Complaint ¶ 35).

Plaintiff does not dispute that he defaulted under the loan. On December 6, 2016, PNC retained Harmon Law PC to foreclose the Dan-Harry Mortgage. (Complaint ¶ 36). Defendant PNC foreclosed and the subject property was sold at mortgagee's foreclosure sale to a third party bidder on January 23, 2017. (Complaint ¶ 37). Plaintiff alleges PNC did not have a face-to-face interview with Plaintiff prior to foreclosing and made no effort to arrange such a meeting in breach of paragraph 9(d) of the Dan-Harry Mortgage and in violation of 24 CFR § 203.604(b).[2] (Complaint ¶ 39-40). Plaintiff also claims these allegations amount to deceptive, unfair and unconscionable practices in violation of R.I. Gen. Laws § 6-13.1-2. (Complaint ¶ 122).

Plaintiff asserts damages including emotional distress, loss of title to property, improper reporting to credit bureaus, lost opportunities to seek other loss mitigation alternatives to foreclosure, court costs, and attorney's fees in defense of foreclosure and eviction. (Complaint ¶ 73). Plaintiff seeks actual, monetary, punitive and exemplary damages, restitution, an

---

[1] While this Court is required to construe this allegation and other well-pleaded allegations as true for purposes of the motion to dismiss, PNC does not concede the truth of such allegations. The facts would show that while Ginnie Mae might have had an interest in the loan at one time, PNC was the mortgagee, owner, and holder in December 2016-January 2017 when the foreclosure occurred.

[2] Likewise, the facts would show PNC did comply with the HUD regulations by making reasonable efforts to arrange a face-to-face meeting.

4

accounting, attorney's fees and costs, equitable relief and all other relief as provided by state law. (Complaint ¶ 88).

## ARGUMENT

### I. Count I Fails to State a Claim for Relief Under R.I.G.L. § 34-11-34

Count I of the Complaint asserts that the foreclosure sale and conveyance of the property is invalid because PNC did not have or record a power of attorney from Ginnie Mae (alleged to be the "holder" of the "note") authorizing PNC to make the conveyance, a requirement asserted to be founded in R.I.G.L. § 34-11-34. (Complaint ¶ 37).

Count I fails to state a claim, however, because § 34-11-34 is simply inapplicable here. The statute provides:

> Any conveyance executed by attorney shall be as valid as if executed by the grantor himself, providing that a power of attorney be given by such grantor for this purpose; which power and the deed executed by the attorney thereunder shall be signed, acknowledged, delivered and recorded with like formalities prescribed by law concerning deeds from grantors in person.

Thus, by its very terms, the statute addresses the validity of deeds executed by attorneys on behalf of principals; it does not address the authority of a mortgagee to foreclose property in its own right.

In *Bucci v. Lehman Brothers Bank, FSB,* 68 A.3d 1069 (R.I. 2013), the court held that the mortgagee, *i.e.*, the party named in the mortgage had the right foreclose regardless of the current identity of the note-holder. In *Bucci*, the plaintiff asserted that MERS -- the party named as mortgagee in the mortgage contract but not the party who owned the note -- to foreclose on the mortgage. The Court held that there was "no reason" why MERS "as agent of the owner of the note" could not foreclose on behalf of that entity. *Id.* at 1089. The Court also held that a power of attorney in MERS' favor did not need to be recorded, and in fact MERS' agency status to the holder of the note need not even be in writing. *Id.* at n. 10 (quoting *UXB Sand & Gravel, Inc. v. Rosenfeld Concrete Corp.*, 641 A.2d 75, 79 n. 1 (R.I. 1994).

5

In the instant case, Plaintiff alleges that Commonwealth United Mortgage, a division of National City Bank of Indiana, was the party named as the original mortgagee. (Complaint ¶ 31) ("On December 7, 2005, Plaintiff executed a mortgage and note . . . to Commonwealth United Mortgage, a Division of National City Bank of Indiana."). Plaintiff also alleges: "On December 31, 2008, PNC acquired National City and became mortgagee of the Dan-Harry Mortgage as successor in interest to National City. As a result of said acquisition, PNC also assumed Document Custodial duties for the Dan-Harry Mortgage and Note." (Complaint ¶ 35). Nowhere does Plaintiff suggest in the Complaint that PNC is not the mortgagee, and *Bucci* holds that the mortgagee may foreclose. Instead, Plaintiff's theory seems to be that, because a party other than PNC was the "Lender," PNC must have had a power of attorney authorizing it to foreclose and that power of attorney must be recorded under R.I.G.L. §34-11-34.

Rhode Island trial courts have rejected this exact theory. For example, the court in *Deutsche Bank Nat. Trust Co. v. Monegro*, No. KD 2011-1345, 2013 WL 372646 (R.I. Super. Jan. 24, 2013) (Rubine, J.) addressed a similar argument. In an eviction action following a foreclosure, the former borrower asserted that two assignments of the mortgage and the execution of the foreclosure deed by the foreclosing party were void because, in part, there was no recording of a power of attorney under § 34-11-34. The court rejected this argument stating:

> Finally, §34-11-34 does not establish that a conveyance is void absent the recording of a power of attorney. Therefore, Martinez's assertion is not supported by the plain, unambiguous language of the statutes. Moreover, no statute exist in Rhode Island requiring individuals who execute assignments on behalf of an assignor to record their power of attorney in order to execute the assignment of a mortgage interest on behalf of the assignor.

*Id.* at *4.

Also, in *Akalarian v. RBMG, Inc*. 2013 WL 3956942 (R.I. Super. July 25, 2013) (Rubine, J.), the trial court was even more blunt:

> Plaintiff also sets forth a convoluted argument that proof of agency requires the recording of a power of attorney and that, here, Defendants failed to record powers of attorney to act on behalf of any of the other banks involved, including IndyMac and FDIC. In Rhode Island, an agency agreement relating to a mortgage need not be in writing, much less recorded. *See Bucci*, No. 2010-146-A., 2013 WL 1498655, *18 n.10; *see also UXB Sand & Gravel, Inc. v. Rosenfeld Concrete Corp.*, 641 A.2d 75, 79 n.1 (R.I. 1994). Further, none of the facts in this matter demonstrate that any entity executed a conveyance on behalf of another entity as attorney in fact such that recording of a power of attorney was required pursuant to G.L. 1956 § 34-11-34.

*Id.* at fn. 10.

In sum, Plaintiff admits that PNC was the mortgagee under the Dan-Harry Mortgage and, therefore, under Rhode Island law, PNC had a right to foreclose that mortgage. The assertion that PNC must also have written authorization in the form of a power of attorney from the note-holder and that such power of attorney must be recorded has been considered and rejected by Rhode Island courts. As a result, PNC respectfully requests that the Court dismiss Count I.

## II. Counts II And III Fail To State A Claim For Breach Of Contract With Respect To HUD Regulations.

In Counts II and III, Plaintiff alleges that PNC breached the mortgage contract by failing to comply with 24 CFR § 203.604(b), which requires a lender/servicer to hold a face-to-face interview or to make reasonable attempts to arrange a face-to-face meeting prior to foreclosing on the property subject to the mortgage (the "Face-to-Face Rule"). Plaintiff alleges that PNC's alleged failure to comply constitutes a breach of contract under Rhode Island law because Paragraph 9(d) of the Dan-Harry Mortgage incorporates that obligation.[3]

### A. HUD Regulations Do Not Provide a Private Right of Action.

---

[3] It is unclear what the difference between Count II and Count III is. The titles of the counts are different but the substance of the allegations is virtually identical and the legal theory seems to be the same as well. As a result, PNC will address these two counts together.

As a threshold matter, the HUD Regulations, including § 203.604(b), do no create a private right of action in favor of the borrower. *See, e.g., Bates v. JPMorgan Chase Bank, N.A.*, 768 F.3d 1126, 1130-1131 (11th Cir. 2014) ("there is no express or implied statutory private right of action for HUD violations"). Therefore, Plaintiff cannot sue PNC directly for a violation of § 203.604(b). To circumvent this prohibition, Plaintiff takes the position that § 203.604(b) was incorporated by reference into the mortgage at Paragraph 9(d). (Complaint ¶ 107). Therefore, Plaintiff alleges "[PNC] breached the mortgage contracts of Plaintiff and members of the class by refusing to honor the terms of the mortgage contracts. . ." (*Id.*).

Plaintiff's claim has no support under these facts. There appears to be no First Circuit, District of Rhode Island or State of Rhode Island precedent supporting an incorporation by reference theory of HUD regulations as asserted by Plaintiff here. Many other jurisdictions, however, have addressed that issue. Among those cases, courts either reject the incorporation theory altogether[4] or, to the extent they recognize it, hold that borrowers may invoke the Face-to-Face Rule as a shield to prevent an in-process foreclosure but not as a sword to collect damages. *See, e.g., Christenson v. Citimortgage, Inc.,* No. 12-cv-02600, 2013 WL 5291947, at *7 (D. Colo. Sept. 18, 2013) (collecting cases) ("[A]lthough some courts have determined that the HUD Regulations become enforceable by a private cause of action if they are incorporated into a mortgagor's loan documents, those courts represent the minority position.").

Multiple state courts have adopted this rule under varying state foreclosure regimes. *Wells Fargo Home Mortg., Inc. v. Neal*, 398 Md. 705, 721, 922 A.2d 538, 547 (2007) ("*Neal*") is especially instructive. There, the Court first embraced the majority rule: "Although we conclude

---

[4] *See, e.g., Dixon v. Wells Fargo Bank, N.A.*, No. 12-10174, 2012 WL 4450502, at *8 (E.D. Mich. Sept. 25, 2012).

that a mortgagor may not wield as a sword the HUD regulations alluded to in a mandatory FHA form deed of trust, there is ample support that aggrieved mortgagors may assert an allegation of regulatory noncompliance as a shield against unauthorized foreclosure actions." *Id.* The borrower argued, however, that this doctrine evolved in judicial foreclosure states where alleging a Face-to-Face meeting failure could be done via affirmative defense, whereas Maryland's quasi-judicial system offered no obvious opportunity to raise the defense. *Id.* at 725. Maryland's Court of Appeals held that there were ample opportunities to raise the defense during Maryland's foreclosure process. *Id.* at 727-29. *See also ABN AMRO Mortg. Grp., Inc. v. Tullar,* 770 N.W.2d 851, 2009 WL 1066511 at *3 (Iowa Ct. App. 2009) (allowing offensive use of HUD regulations would "be allowing a private right of action by the backdoor") (citing *Neal,* 922 A.2d at 543-44, 546). The same should apply here. Rhode Island's non-judicial system also provides a mechanism for challenges during the foreclosure process, and borrowers use it. *See, e.g., Rosano v. Mortg. Elec. Registration Sys., Inc.*, 91 A.3d 336, 337 (R.I. 2014) ("The plaintiff filed suit in the Superior Court seeking a declaratory judgment and injunctive relief preventing the foreclosure sale of his mortgaged property, arguing that the assignment of his mortgage through MERS was a legal nullity.")

In this case, foreclosure commenced on or about December 16, 2016, and the property was sold at a foreclosure sale on January 23, 2017 to a third party. (Complaint ¶¶ 36-37). Plaintiff's opportunity to invoke the Face-to-Face rule to prevent foreclosure, as only some courts have permitted at all, has long since passed.

    **B.    Plaintiff May Not Invoke HUD Regulations as a Matter of Good Faith and Fair Dealing.**

Plaintiff's characterization of the breach of contract as a breach of a contractual duty of "good faith" rather than as a straightforward breach of Paragraph 9(d) of the mortgage contract is likewise unavailing. First, there is simply no factual distinction between what Plaintiff alleges constitutes a violation of Paragraph 9(d) of the mortgage and what Plaintiff alleges constitutes a violation of the duty of "good faith." Compare

> [T]he foreclosure purportedly conducted by PNC Bank N.A. is in breach of the mortgage contract at paragraph 9(d) and a violation of 24 CFR 203.604(b) which states that a mortgagor must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such meeting . . . (Complaint ¶ 39)

with

> As the entity responsible for servicing Plaintiff and class members mortgage loans, the Defendant owed the Plaintiff and class members a duty of good faith and fair dealing." (Complaint ¶ 91). "By breaching the terms of the mortgage contracts of Plaintiff and members of the class as stated in paragraph 9(d) by proceeding and completing foreclosures with those actions were not permitted by regulations of the Secretary of the Department of Housing and Urban Development ad codified in 24 CFR 23.604(b), the Defendant violated this duty [of good faith and fair dealing]. (Complaint ¶ 92).

In other words, the same failure is alleged to be both the breach of contract and the breach of the duty of "good faith." In light of that identity, it would be anomalous to rule that Plaintiff could avoid the limitations of the breach of contract theory simply by re-characterizing it as a breach of the duty of "good faith."

Moreover, Rhode Island law does not permit the implication of a contractual duty not bargained for by the parties under the guise of a "good faith" obligation. Rhode Island courts will find a good faith duty under circumstances where a contractual party is given discretion under a contract in performing an otherwise existing contractual duty; they will not impose a duty to undertake some action that is not otherwise required by the contract. *Miller v. Wells Fargo Bank, N.A.*, No. KC-11-00060, 2015 WL 1515942 (R.I. Super. March 30, 2015) (Rubine, J.) applied these principles of law under similar facts to the case at bar. In *Miller* the plaintiff asserted that the

defendant breached the implied covenant of good faith and fair dealing by failing to consider loss mitigation options (including a loan modification) under the Home Affordable Modification Program ("HAMP") guidelines. The court recognized that there was no private right of action under the guidelines and also refused to find a breach of a contractual good faith duty based on them. The court held that in the absence of a bargained-for contractual obligation that required the exercise of discretion, the claim of a breach of the good faith duty did not state a claim. *Id.* at *10.

In sum, Plaintiff cannot state a claim in Counts II and III for breach of contract because the contractual duty he posits, based on incorporation of federal regulations, cannot be used offensively as he is attempting to do here. Moreover, characterizing exactly the same failure as a breach of the duty of "good faith" does not alter that result. Therefore, PNC respectfully requests that the Court dismiss Counts II and III.

### III. Count IV Fails To State A Claim Under The Rhode Island Deceptive Trade Practices Act.

Finally, in Count IV of the Complaint, Plaintiff asserts a violation of § 6-13.1-2 of the Rhode Island Deceptive Trade Practices Act, Rhode Island Gen. Laws (the "DTPA"). (Complaint ¶ 122). To state a viable claim under the DTPA, Plaintiff must establish (a) that he has purchased or leased goods or services, and (b) that, in connection with that purchase or lease, the seller or lessor of the goods or services has employed a "method, act or practice declared unlawful by § 6-13.1-2."[5] Plaintiff has satisfied neither of these pleading requirements.

---

[5] Section 6-13.1-2 states, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful." Section 6-13.1-2 can form the basis of a private right of action by virtue of § 6-13.1-5.2 which provides: "(a) Any person who purchases or leases goods or services primarily for personal, family, or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act, or practice declared unlawful by § 6-13.1-2, may bring an action under the rules of civil procedure in the superior court of the county in which the seller or lessor resides, is found, has his or her principal place of business, or is doing

First, even assuming *arguendo* that Plaintiff has alleged some "deceptive practice" in the Complaint, it must still be dismissed because the alleged "deceptive practice" was not undertaken in conjunction with a purchase or lease of goods or services. Rhode Island trial courts have held that mortgage loans are not "goods or services" within the meaning of the DTPA. *See Miller*, *supra* at *8 ("A mortgage is not in the category of goods or services subject to the DTPA."); *De Simone v. Warwick Fed. Sav. & Loan Ass'n*, No. C.A. 80-822, 1981 WL 386509, at *1 (R.I. Super. Oct. 20, 1981) (Needham, J.) ("A mortgage loan is not a purchase or lease of goods or services and hence the subject matter of the statute is inapplicable."), *see also Watson v. Aurora Loan Services, LLC,* No. 4:11-cv-301, 2012 WL 3594233, *6 (N.D. Texas, August 21, 2012) (holding under the Texas Deceptive Trade Practices Act that alleged violations arising from a loan modification do not satisfy a similar "goods or services" requirement). Therefore, the DTPA does not apply here.

Moreover, Plaintiff fails to identify in the Complaint any act or practice capable of forming the basis of a DTPA claim in the first instance; there is no "deceptive practice." Plaintiff recites in conclusory fashion that "Defendant made false, deceptive and misleading representations and omissions about the material aspects of the goods and services described herein" (Complaint ¶ 118), but he identifies no such representation or any particular omission. This is legally insufficient. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Federal Rule of Civil Procedure Rule 9(b). Plaintiff also falls far short of the requirement that "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly* 550 U.S. at 555.

---

business, or in the superior court of the county as is otherwise provided by law, to recover actual damages or two hundred dollars ($200), whichever is greater. The court may, in its discretion, award punitive damages and may provide other equitable relief that it deems necessary or proper."

Nor does Plaintiff's incorporation of the prior allegations of the Complaint in Count IV alter the conclusion that no "deceptive practice" is alleged. In Count I, Plaintiff merely asserts that PNC failed to record a power of attorney in conjunction with the foreclosure. Not only has that "failure" been shown not to be a legal requirement under Rhode Island law in Section I above, but it is also impossible to characterize that "failure" as a "deceptive practice" supporting a violation of the DTPA.[6] That leaves only Plaintiff's assertion in Counts II and III that PNC failed to hold a face-to-face interview or make a reasonable attempt to arrange a face-to-face meeting as a potential "deceptive practice" subject to the DTPA. Again, it is difficult if not impossible to conceptualize such a failure as somehow constituting a "deceptive practice." Even assuming such failure constituted a breach of contract, there is no ground upon which to convert that simple breach of contract into a deceptive trade practice claim. "A mere breach of contract does not constitute an unfair or deceptive trade practice under 93A." *Commercial Union Ins. Co. v. Seven Provinces Ins. Co.*, 217 F.3d 33, 40 (1st Cir. 2000) (applying analogous Massachusetts law). Therefore, the Complaint simply fails to allege a deceptive practice capable of forming the basis of a DTPA claim.[7]

In sum, Count IV fails to state a claim upon which relief can be granted under the Rhode Island Deceptive Trade Practices Act. Mortgage loans are not "goods or services" subject to the

---

[6] In other words, as discussed in Section I above, Plaintiff attempts to take a perfectly legal action, foreclosure by the mortgagee, turn it into a statutory violation, and then convert the statutory violation into a "deceptive practice."

[7] It should also be noted that PNC may be exempt from the DTPA under Section 6-13.1-4 because the very provision claimed to be the basis for the violation is a regulation of a federal agency. *See Chavers v. Fleet Bank (RI), N.A.*, 844 A.2d 666 (R.I. 2004) (affirming summary judgment in favor of bank whose credit card solicitation practices were governed by several federal agencies).

DTPA and there are no allegations of a "deceptive practice." As a result, PNC respectfully requests that the Court also dismiss Count IV.

## IV. The Complaint Should Be Dismissed To The Extent It Seeks To Void The Foreclosure Sale.[8]

Even if Plaintiff's Complaint were to survive with respect to his damages claim (and it should not), Plaintiff's request for declaratory relief invalidating the foreclosure sale and injunctive relief to place him back in title cannot stand under Rhode Island law. Although Plaintiff makes the conclusory legal allegation that the foreclosure sale is "void," the factual allegations of the Complaint itself and Rhode Island law dictate the opposite conclusion. Plaintiff alleges that PNC acquired National City and became mortgagee of the Dan-Harry Mortgage as successor in interest to National City." (Complaint ¶ 35). Under Rhode Island law, a mortgagee is entitled to foreclose on the property. *See Bucci v. Lehman Bros. Bank*, 68 A.3d 1069, 1087 (R.I. 2013). Therefore, if PNC failed to undertake any prerequisites to foreclosure, either failing to record a power of attorney or hold a face-to-face meeting, then at best the foreclosure sale is voidable, not void. *Clark v. Mortgage Electronic Registration Systems, Inc.,* 7 F.Supp. 3d 169, 178-180 (D.R.I. 2014) (invalid assignments in chain of title render foreclosure merely voidable, not void, and expressly rejecting "power of attorney" requirement as having any relation to the foreclosure's validity).

Plaintiff alleges in the Complaint that the property was sold to an unidentified "third party bidder," not to PNC itself. (Complaint ¶ 38). There is no allegation in the Complaint that casts any doubt on the presumed good faith of this "third party bidder," and Plaintiff does not seek to void

---

[8] To the extent the Complaint seeks emotional or punitive damages arising from the alleged breach of contract, these claims should also be dismissed as such damages are not recoverable in contract. *O'Coin v. Woonsocket Inst. Trust Co.*, 535 A.2d 1263, 1266 (R.I. 1988) ("[N]ominal and punitive damages do not lie in such actions, absent the most egregious circumstances."); *AAA Pool Serv. & Supply, Inc. v. Aetna Cas. & Sur. Co.*, 121 R.I. 96, 99, 395 A.2d 724, 726 (1978) (limiting contract damages).

the transaction by attacking that party's status, but rather by attacking the validity of the transferring instrument. Under Rhode Island law, *bona fide* purchasers are protected from relief of the type sought by Plaintiff when the transaction by which they acquired the property is merely voidable. *See, e.g., Shappy v. Downcity Capital Partners, Ltd.*, 973 A.2d 40, 44 (R.I. 2009). Nor has Plaintiff joined said third party as a defendant so as to afford the buyer an opportunity to protect his or her rights. Regardless, Plaintiff's voidness argument fails under *Clark* and the portions of Plaintiff's Complaint seeking to invalidate the sale or provide him title should be dismissed.

## CONCLUSION

Because Rhode Island permits a mortgagee, like PNC, authority to foreclose without power of attorney from any other party, and because Plaintiff may not privately enforce HUD regulations after a completed foreclosure, as his is, Plaintiff's Complaint fails on all counts. PNC respectfully requests that the Court dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: April 28, 2017          **PNC BANK, NATIONAL ASSOCIATION**

By: */s/Harris K. Weiner*
Harris K. Weiner (#3779)
SALTER, MCGOWAN, SYLVIA & LEONARD, INC.
321 South Main Street, Suite 301
Providence, RI 02903
Tel.: 401.274.0300
Fax: 401.453.0073
hweiner@smsllaw.com

Of Counsel:

Richard E. Gottlieb
Brett Natarelli
Arthur F. Radke
Manatt, Phelps & Phillips, LLP
115 South LaSalle Street
Suite 2600
Chicago, IL 60603

## CERTIFICATE OF SERVICE

    I, Harris K. Weiner, hereby certify that on April 28, 2017 a copy of the foregoing document, filed through the CM/ECF system, will be sent electronically to all counsel of record.

                                                      */s/ Harris K. Weiner*

Todd S. Dion, Esq. (#6852)
371 Broadway
Providence, RI 02909
401-353-1230 Phone
401-965-4131 Cell
401-353-1231 Fax
toddsdion@msn.com

318606010.1