```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF RHODE ISLAND
_____
                                    )
DAWARI DAN-HARRY, on behalf of      )
himself and all others so           )
similarly situated,                 )
                                    )
              Plaintiff,            )
                                    )
       v.                           )    C.A. No. 17-136 WES
                                    )
PNC BANK, N.A.,                     )
                                    )
              Defendant.            )
_____ )
```

### ORDER

WILLIAM E. SMITH, Chief Judge.

Magistrate Judge Patricia A. Sullivan filed a Report and Recommendation ("R&R") (ECF No. 13) recommending that Defendant's Motion To Dismiss (ECF No. 4) be granted as to Count II of Plaintiff's Complaint (ECF No. 1-1) but denied as to Count III. After carefully reviewing the R&R and the relevant papers, and having heard no objections, the Court ACCEPTS the R&R (ECF No. 13) in its entirety and adopts the recommendations and reasoning set forth therein. Therefore, Defendant's Motion To Dismiss (ECF No. 4) is GRANTED as to Count II but DENIED as to Count III.

IT IS SO ORDERED.

/s/ W.E.Smith
_____
William E. Smith
Chief Judge
Date:  February 26, 2018

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| DAWARI DAN-HARRY, on behalf of himself and all others so similarly situated, | : : : | |
| Plaintiff, | : : | |
| v. | : : | C.A. No. 17-136WES |
| PNC BANK, N.A., | : : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

This case is a putative class action grounded on Plaintiff Dawari Dan-Harry's challenge to the viability of the foreclosure of his mortgage; it is before the Court on the Fed. R. Civ. P. 12(b)(6) motion of the mortgagee, Defendant PNC Bank, N.A., ("PNC Bank") to dismiss his class action complaint ("complaint"), which he brought for himself and others similarly situated. The complaint was originally filed in the Rhode Island Superior Court. In reliance on both diversity of citizenship and federal question jurisdiction arising from Plaintiff's reliance on a federal regulation, 24 C.F.R. § 203.604(b), Defendant removed it to this Court. ECF No. 1.

Plaintiff's principal claim is that PNC Bank failed to comply with its contractual and regulatory duty as mortgagee to hold a face-to-face meeting with the mortgagor before foreclosing as required by 24 C.F.R. § 203.604(b), a regulation promulgated by the United States Department for Housing and Urban Development ("HUD regulations"). The HUD regulations are applicable to Plaintiff's mortgage because it is insured by the Federal Housing Authority ("FHA"). Plaintiff also claimed that the foreclosure was tainted both because the mortgagee lacked a power of attorney from the note holder and because of PNC Bank's alleged deceptive practices in violation of the Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws § 6-

13.1-2. Facing the headwinds of Defendant's legal challenge to the latter claims (Counts I and IV), Plaintiff dropped his sails and filed a voluntary notice of dismissal of Counts I and IV.[1]

As to the remaining claims, I recommend that the Court dismiss Count II ("Breach of Duty of Good Faith and Reasonable Diligence") because Rhode Island does not recognize such a stand-alone cause of action, as well as because 24 C.F.R. § 203.604(b) does not support a private right of action. By contrast, Count III is based on breach of the express contractual language in paragraph 9(d) of the mortgage, which unambiguously requires compliance with the HUD regulations, including 24 C.F.R. § 203.604(b), as a condition precedent to foreclosure. Concluding that Rhode Island would follow the case law as it has developed in Massachusetts and elsewhere regarding the incorporation of the HUD regulations into FHA insured mortgages that include paragraph 9(d), I find that Count III is sufficient to state a viable state-law claim of breach of contract. Accordingly, I recommend that the motion to dismiss Count III be denied. In addition, PNC Bank challenges the viability of Plaintiff's prayer seeking punitive damages and compensatory damages arising from emotional distress. Whether or not these remedies are legally appropriate should be addressed after the factual record is more fully developed; accordingly, I recommend that the Court deny as premature the motion to dismiss the allegations seeking these remedies.

## I.    BACKGROUND[2]

---

[1] Plaintiff's opposition to the motion states that he "hereby voluntarily dismisses Counts I and IV"; counsel reiterated his intent to dismiss these Counts during oral argument on the motion. Also during oral argument, counsel for PNC Bank indicated it would have no objection to a voluntary dismissal of Counts I and IV. Plaintiff followed up with a Notice of Voluntary Dismissal filed on September 29, 2017. ECF No. 12. Based on the filing of this notice before PNC Bank answered or filed a motion for summary judgment, Counts I and IV are dismissed without prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i).

[2] These background facts, accepted as true for this Fed. R. Civ. P. 12(b)(6) analysis, are gleaned from Plaintiff's complaint. ECF No. 1-1.

On December 7, 2005, Plaintiff purchased a house at 84 Corinth Street in Providence, Rhode Island, for $203,000. ECF No. 1-1 ¶¶ 15, 30-31. The original mortgage and note were issued by Commonwealth United Mortgage, a division of National City Bank; the mortgage was insured by FHA. ECF No. 1-1 ¶¶ 31-32. Plaintiff's note was pooled and transferred to the Government National Mortgage Association ("Ginnie Mae"), while the mortgage was retained by the division of National City Bank. ECF No. 1-1 ¶¶ 33-34. In 2008, National City Bank was acquired by PNC Bank. ECF No. 1-1 ¶ 35. Several years later PNC Bank foreclosed on the property; on January 23, 2017, the property was sold to a third-party bidder at foreclosure sale. ECF No. ¶ 1-1 37. Plaintiff continues to occupy the property as his primary residence. ECF No. 1-1 at ¶ 41.

As mortgagee on an FHA-insured mortgage, PNC Bank is subject to applicable HUD regulations, including 24 C.F.R. § 203.604(b). ECF No. 1-1 ¶ 24. In pertinent part, 24 C.F.R. § 203.604(b) requires that "[t]he mortgagee <u>must</u> have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid." (emphasis supplied). This regulatory mandate is incorporated into the language of Plaintiff's mortgage in a standardized paragraph – paragraph 9(d). Paragraph 9(d) expressly requires compliance with HUD regulations (including 24 C.F.R. § 203.604(b)) as a condition precedent to foreclosure under the mortgage:

> 9(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full, and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

ECF No. 1-1 at ¶ 107. This contractual requirement is binding on PNC Bank, the successor to National City Bank, by reason of its status as mortgagee. See ECF No. 1-1 at ¶ 35.

3

PNC Bank failed to comply with this requirement, thereby violating 24 C.F.R. § 203.604(b) and breaching the mortgage contract, in that it did not have a face-to-face meeting with Plaintiff before three full monthly installments due on the mortgage were unpaid, nor did it make reasonable efforts to arrange such a meeting. ECF No. 1-1 ¶ 107. Based on this omission, Plaintiff claims that he and the members of the putative class have been damaged because they have lost their homes and the equity in them; they are exposed to higher principal balances caused by the assessment of inappropriate fees and charges; they have expended money on bankruptcy proceedings, the legal defense of foreclosure and eviction, and for moving and relocation;[3] they have experienced negative impact on their credit; and they have lost the opportunity to access loss mitigation and mediation to work out the delinquency. They allege further that they have suffered extreme emotional distress and are entitled to punitive damages based on the gravity of the harm and the unfair, oppressive and contrary-to-public-policy nature of the conduct. ECF No. 1-1 ¶¶ 45-49, 93-94, 108. Pleading on information and belief, Plaintiff alleges that PNC Bank's conduct is consistent with a pattern of acting in bad faith and in breach of the duty of good faith, which PNC Bank has engaged in for its own economic benefit and to Plaintiff's detriment, in order to prevent the contractual objectives of the parties to the mortgage from being achieved. ECF No. 1-1 ¶ 110.

For remedies based on the claim in Count II, Plaintiff seeks declaratory relief determining that the foreclosure is void, an injunction preventing the transfer of title to the property and

---

[3] The complaint does not inform the reader which of these enumerated damages reflect concrete injuries actually affecting Plaintiff himself, as opposed to speculation regarding the impact of PNC Bank's practices on putative class members. Common sense suggests that Plaintiff has not experienced all of the itemized losses. For example, Plaintiff alleges that he still occupies his residence; if true, it seems illogical that he has spent money on moving and relocation. While claims based on the mortgagee's failure to comply with the 24 C.F.R. § 203.604(b) face-to-face meeting requirement sometimes founder at the summary judgment phase because of the difficulty of demonstrating actionable damages, e.g., Njema v. Wells Fargo Bank, N.A., 124 F. Supp. 3d 852, 876-77 (D. Minn. 2015), whether this case will suffer a similar fate is beyond the scope of this report and recommendation. As noted in the analysis that follows, I find that Plaintiff's pleading of damage arising from the breach of paragraph 9(d) is sufficient to survive a motion to dismiss as long as the claim is otherwise viable.

restoring legal title to Plaintiff, as well as compensatory and punitive damages, including damages for "severe and extreme emotional and mental distress." ECF No. 1-1 ¶¶ 93-95. In Count III, Plaintiff incorporates by reference the remedies sought in Count II and also seeks other damages arising from the breach, including the loss of his interest in the property and the collateral expenses associated with his ongoing delinquency and foreclosure. ECF No. 1-1 ¶ 108.

## II. STANDARD OF REVIEW

In considering this Fed. R. Civ. P. 12(b)(6) motion, the Court must accept as true all plausible factual allegations in the complaint and draw all reasonable inferences in Plaintiff's favor. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). In so doing, the Court is guided by the now-familiar standard requiring the inclusion of facts sufficient to state a claim for relief that is plausible:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). Put differently, for a complaint to survive a motion to dismiss, its "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Consistent with Erie R. Co. v. Tompkins, 304 U.S. 64 (1938), federal courts must apply the Twombly/Iqbal standard even in cases where state law controls the substantive claims. This includes cases like this one that were removed from state court. Reilly v. Cox Enters., Inc., C.A. No. 13-785S, 2014 WL 4473772, at *3 (D.R.I. Apr. 16, 2014).

Plaintiff has not yet moved to certify the class. Therefore, this motion to dismiss examines the viability only of Plaintiff's claims, without regard to any different claims that might be asserted by putative class members. See McNulty v. Fed. Hous. Fin. Agency, 954 F. Supp. 2d 294, 297 (M.D. Penn. 2013) (court may decide defendant's dispositive motion before taking up issue of class certification).

### III. LAW AND ANALYSIS

#### A. Count II

Count II is based on breach of a free-floating "duty of good faith and reasonable diligence." According to the complaint, this duty arises because PNC Bank is "the entity responsible for servicing Plaintiff['s] . . . mortgage loans." ECF No. 1-1 ¶ 91. Plaintiff alleges that this duty allegedly was breached when PNC Bank foreclosed without conducting the face-to-face meeting in violation of 24 C.F.R. § 203.604(b) and in breach of paragraph 9(d) of the mortgage. ECF No. 1-1 ¶ 92.

To the extent that Count II purports to assert a state-law claim for a breach of a duty of good faith or reasonable diligence untethered to a contract or a legally recognized fiduciary relationship, it fails because Rhode Island does not recognize such a cause of action. A.A.A. Pool Service and Supply, Inc. v. Aetna Cas. & Sur. Co., 395 A.2d 724, 725-26 (R.I. 1978). As applied in the mortgage context, the Superior Court recently reaffirmed this principle in Miller v. Wells Fargo Bank, N.A., which holds that there is no state-law cause of action for breach of a duty of good faith based on a mortgagee's failure to comply with federal regulations. No. KC-11-00060, 2015 WL 1515942, at *10 (R.I. Super. Mar. 30, 2015) (dismissing claim based on breach of duty of good faith arising from mortgagee's failure to consider loss mitigation). To the extent that Count II purports to assert a state-law claim for breach of the covenant of good faith

6

and fair dealing implicit in Plaintiff's mortgage contract, it should be stricken as redundant of the same claim in Count III, pursuant to Fed. R. Civ. P. 12(f). And to the extent that Count II purports to assert a federal law claim arising directly from the breach of 24 C.F.R. § 203.604(b), it fails because it is well settled that the HUD regulations do not support a private right of action in favor of the mortgagor. Bates v. JPMorgan Chase Bank, N.A., 768 F.3d 1126, 1130-31 (11th Cir. 2014) ("there is no express or implied statutory private right of action for HUD violations"); Christenson v. Citimortgage, Inc., C.A. No. 12-cv-2600-CMA-KLM, 2013 WL 5291947, at *7 (D. Colo. Sept. 18, 2013) ("HUD regulations do not, on their own, establish a private cause of action"); Dixon v. Wells Fargo Bank, N.A., No. 12-10174, 2012 WL 4450502, at *6 (E.D. Mich. Sept. 25, 2012) ("It appears well accepted . . . that no private right of action exists under the HUD regulations.").

Based on the foregoing, I recommend that Count II be dismissed.

B.      Count III

Count III asserts a state-law claim for breach of contract. Plaintiff alleges that the foreclosure on his property was in breach of paragraph 9(d), which expressly provides that compliance with the HUD regulations is a condition precedent to foreclosure, because PNC Bank failed to afford him the mandatory pre-foreclosure face-to-face meeting in violation of the requirement in 24 C.F.R. § 203.604(b). The claim requires this Court to determine whether the incorporation language in paragraph 9(d) means what it seems to say: that is, does it impose on PNC Bank as mortgagee a contractual obligation to comply with 24 C.F.R. § 203.604(b) as a condition precedent to foreclosure? And, if it does, are the remedies available to the mortgagor for the breach different from what state law normally affords for breach of contract after the consummation of the foreclosure sale? In addition, by contrast with Count II, which relies on a

7

free-standing duty of good faith, Count III also asserts the well-recognized claim for breach of the implied covenant of good faith and fair dealing that is embedded in the mortgage contract. See In re Demers, 511 B.R. 233, 238 (Bankr. D.R.I. 2014) (when mortgage unambiguously sets conditions precedent to mortgagee's remedy of foreclosure, failure to comply is actionable breach of both contract and implied covenant of good faith and fair dealing); Dovenmuehle Mortg. Inc. v. Antonelli, 790 A.2d 1113, 1115 (R.I. 2002) ("virtually every contract contains an implied covenant of good faith and fair dealing between the parties").

The parties acknowledge that the viability of Count III presents a state-law issue of first impression because the Rhode Island state courts have yet to tackle the precise question. Plaintiff points out that, in two recent decisions, this Court has held that such a claim survives Fed. R. Civ. P. 12(b)(6) scrutiny.[4] He asks the Court to follow suit in this case. PNC Bank counters that these recent decisions are memorialized in text orders and, lacking analysis, should be afforded no precedential value. ECF No. 11 at 2. PNC Bank also correctly notes that, in any event, a federal judge's view of how the Rhode Island Supreme Court will rule if and when it faces an issue should not be deemed to be controlling.[5] PNC Bank is right – the Court cannot

---

[4] Whether paragraph 9(d)'s incorporation of the HUD regulations mandating a pre-foreclosure face-to-face meeting supports a breach of contract claim for damages and to void the foreclosure sale has been addressed in at least three decisions issued by Judge McConnell. In the two that were the subject of the parties' dispute referenced in the text, the Court ruled by text order. Ferreira et al. v. Ditech Fin. LLC, et al., C.A. No. 17-115JJM, Text Order of July 10, 2017 ("the Court finds that the Plaintiffs have alleged a cause of action for breach of contract under Paragraph 9(d) of the mortgage contract"); Peralta v. U.S. Bank Nat'l Ass'n, C.A. No. 17-263JJM, Text Order of July 31, 2017 ("As to Count 3 (breach of contract), the Plaintiff has set forth plausible allegations to support a breach of contract claim for violation of paragraph 9(d), through its failure to comply with HUD regulation 24 CFR 203.604(b)."). Even more recently, in a third, which came down after briefing was closed in this case, the Court issued a bench decision that denied a motion to dismiss a plaintiff's breach of contract claim based on defendant's failure to comply with the pre-foreclosure face-to-face meeting requirement. Gonzalez v. Wells Fargo, N.A., C.A. No. 17-276-JJM (bench decision) (Oct. 2, 2017). As of this writing, no transcript in Gonzalez is available.

[5] As the Supreme Court has held, "the proposition that a district judge is better able to 'intuit' the answer to an unsettled question of state law is foreclosed by our holding in Erie." Salve Regina Coll. v. Russell, 499 U.S. 225, 238 (1991). Nevertheless, although Ferreira, Peralta and Gonzalez reflect a federal judge's decision on an issue of state law and lack an explication of the *ratio decidendi*, some deference to them remains appropriate. See Joseph W. Mead, Stare Decisis in the Inferior Courts of the United States, 12 Nev. L.J. 787, 800 (2012) (while "[o]ne district

8

simply advert to Ferreira, Peralta and Gonzalez and close the case. At bottom, because I am required by 28 U.S.C. § 636(b)(1)(B) to write a report and recommendation, a more rigorous analysis is necessary.

The starting point is a survey of the holdings in cases addressing the issue that have been decided elsewhere. This reveals that three very different approaches to this state-law breach of contract question have been evolving. See Adams v. Bank of Am., N.A., 237 F. Supp. 3d 1189, 1198 (N.D. Ala. 2017) (this is "a subject about which state courts are split").

First, as exemplified by the decision of Michigan's federal district court in Dixon v. Wells Fargo, some courts reject the breach of contract claim in reliance on the state law principle that a breach of a pre-existing duty (here, PNC Bank's obligation to have the face-to-face meeting before foreclosing as imposed by the FHA through 24 C.F.R. § 203.604(b)) cannot form the basis for a private contract claim. 2012 WL 4450502, at *8. This analytical approach was appropriately criticized in Bates v. JPMorgan Chase:

> Although promising to do something one is already obligated to do will not provide sufficient consideration for a promise . . . , a promise to perform a preexisting duty owed to a third person, not a party to the contract is sufficient consideration and can give rise to an enforceable obligation . . . the facts here do not implicate the rationale of the pre-existing duty rule because additional consideration was provided by both parties, and Chase did not previously owe a duty to Bates that Bates could enforce.

768 F.3d at 1132. Based on the research undertaken by this Court, it does not appear that this approach has been widely adopted. Moreover, Dixon seems conceptually at odds with the principle endorsed by Rhode Island that contractual conditions precedent to mortgage foreclosure must be strictly construed and enforced pursuant to the contract terms, consistent

---

judge is not bound by the earlier decision of another judge in the same district[,] . . . [h]istorically, district judges extended great deference to the prior decisions within their district").

with the implied covenant of good faith and fair dealing. Demers, 511 B.R. at 238; Bucci v. Lehman Bros. Bank, FSB, 68 A.3d 1069, 1087 (R.I. 2013).

According to the second analytical approach, which one court has characterized as the majority view, compliance with the HUD regulations is folded into the contractual duties imposed on the mortgagee by paragraph 9(d) of the FHA mortgage contract, but the only remedy for breach is defensive, to prevent the foreclosure. See Christenson, 2013 WL 5291947, at *7. According to this group of decisions, once the foreclosure is consummated, the HUD-mandated regulations become largely ineffective. Id. The courts adopting this approach hold that a breach of paragraph 9(d) does not support a damages remedy. See Adams, 237 F. Supp. 3d at 1198-99 (claim may be "'shield' to form the basis of pre-foreclosure sale injunctive relief or to set aside a foreclosure sale," but plaintiffs "may not assert a HUD-compliance based breach of contract claim as a sword to attack Defendant"). Others hold that it does not potentially result in the voiding of a completed foreclosure sale. See, e.g., Christenson, 2013 WL 5291947, at *7 (court agrees with "the majority view that compliance with the HUD regulations is a condition which must occur prior to the lender being able to accelerate and foreclose the debt and that the borrower may use any failure to comply with the regulations 'as a shield in the subsequent foreclosure case'"); Wells Fargo v. Neal, 922 A.2d 538, 547, 551 (Md. 2007) ("mortgagor may not wield as a sword the HUD regulations alluded to in . . . deed of trust"; rather, violations of HUD regulations "may be asserted as an affirmative defense within the injunctive relief apparatus").

Careful scrutiny reveals that the analytical journeys traveled by these courts to reach this seemingly anomalous conclusion – that breach of a mandatory contractual condition precedent does not permit recovery of damages that state law otherwise contemplates would flow from

such a breach – proceed down widely variant roads. For example, Adams bases its holding on the conclusion that, while the mortgagee's failure to comply with HUD regulations might render a foreclosure sale voidable, it would not render it void.[6] Id. at 1198. By contrast, Neal is focused on HUD's purpose in adopting the regulations; far from strictly construing the mortgage-mandated conditions precedent as Rhode Island courts require, Neal deemphasizes the reference in the mortgage to the HUD regulations because it appears in a "mandatory FHA form deed of trust" and was not a bargained-for term. 922 A.2d at 545-47. And Christenson relies on counting cases[7] and follows what it labels as the "majority view" without explaining the analysis supporting its holding. 2013 WL 5291947, at *7.

The third approach, adopted in a number of states, focuses on the unambiguous contract language in the mortgage. Courts adopting this approach recognize that the mortgagor has a cause of action based on breach of contract for damages and other remedies under state law

---

[6] The reasoning in Adams is at variance with this Court's holding in Clark v. MERS, Inc., 7 F. Supp. 3d 169 (D.R.I. 2014). Clark holds that the mortgagor, as a party to the mortgage contract, may challenge any breach by the lender or its assigns. Id. at 180. In Clark, this Court reviewed settled Rhode Island law and concluded that the void/voidability dichotomy, which prevents the mortgagor from raising defects in the assignment of the mortgage that affect only the mortgagee, does not apply when the issue is breach of the mortgage contract between the mortgagee and mortgagor. Id. at 176-77; see Mullins v. GMAC Mortg., LLC, No. 1:09-cv-00704, 2011 WL 1298777, at *3 (S.D. W.Va. Mar. 31, 2011) (reasoning based on lack of standing "misses the mark" when plaintiff's state-law claim alleges that defendants breached mortgage contract).

[7] At least some of the cases listed in Christenson to support the conclusion that the "majority" of states permit paragraph 9(d) of the FHA mortgage to be deployed only defensively appear to conflate the federal law principle that the HUD regulations do not support a private right of action with the state law principle that breach of a contractual condition precedent supports a claim for damages. See, e.g., Urenia v. Pub. Storage, No. CV 13-01934 DDP, 2013 WL 4536562, at *2 (C.D. Cal. Aug. 27, 2013) ("HUD regulations may prevent a foreclosure before it occurs, after a foreclosure happens a plaintiff may not use those regulations to 'bring a private right of action against the lenders.'"); McHatten v. Chase Home Fin. LLC, No. CV-3-1094-PCT, 2010 WL 3882587, at *6 (D. Ariz. Sept. 29, 2010) ("HUD regulations . . . do not provide a claim to the mortgagor for duty owed or for the mortgagee's failure to follow the regulations."); Mitchell v. Chase Home Fin. LLC, C.A. No. 3:06-CV-2099-K, 2008 WL 623395, at *3-4 (N.D. Tex. Mar. 4, 2008) ("there is no private right of action available to a mortgagor for a mortgagee's noncompliance"; breach of contract claim dismissed based on this reasoning). Others do not address whether the breach supports a damage remedy because the mortgagor seeks only to avoid foreclosure. E.g., Lacy-McKinney v. Taylor Bean & Whitaker Mortg. Corp., 937 N.E.2d 853, 864 (Ind. 2010) ("HUD servicing responsibilities at issue in this case are binding conditions precedent that must be complied with before a mortgagee has the right to foreclose on a HUD property. As such, Lacy-McKinney can properly raise as an affirmative defense that Taylor-Bean failed to comply with the HUD servicing regulations prior to commencing this foreclosure action.").

where the contract expressly conditions foreclosure on compliance with HUD regulations, and the mortgagee fails to comply. See, e.g., Njema v. Wells Fargo Bank, N.A., 124 F. Supp. 3d 852 (D. Minn. 2015) (bank's failure to hold face-to-face meeting is breach of mortgage contract; damage remedy, including for loss of mortgagor's property rights, contemplated but rejected based on lack of proof of injury); Wells Fargo Bank, N.A. v. Cook, 31 N.E.3d 1125, 1129 (Mass. App. Ct. 2015) ("[w]here such regulations have been incorporated into the mortgage, compliance with the regulations has been held to be a condition precedent to foreclosure of FHA-insured mortgages"; failure to comply strictly with power of sale renders foreclosure sale void but remedy limited because issue arose in summary eviction proceeding); In re Silveira, No. 11-44812-MSH, 2013 WL 1867472, at *13 (Bankr. D. Mass. May 3, 2013) (HUD regulations incorporated into mortgage are enforceable in claim for breach of contract seeking damages); Mullins v. GMAC Mortg., LLC, No. 1:09-cv-704, 2011 WL 1298777, at *2-3 (S.D. W.Va. Mar. 31, 2011) (plaintiff is not taking "upon himself the role of regulatory enforcer" but is instead "suing under a straightforward state law contract theory, alleging that defendant did not uphold their end of the contractual bargain"; allegation that "plaintiffs suffered damage by losing their home" sufficient for claim to survive motion to dismiss). In Bates, the Eleventh Circuit held that such a cause of action exists under Georgia law: "HUD regulations clearly referenced in a deed as a conditions precedent to the power to accelerate and the power of sale could form the basis of a breach of contact action." 768 F.3d at 1130-33. Accordingly, the court concluded, the mortgagor may recover "damages that would not have occurred but for the breach." Id.

In reaching this result, in contrast to the cases adopting the approaches that bar or significantly limit the mortgagor's ability to sue for breach of contract, these decisions are properly focused on the relevant state's approach to mortgage interpretation. For example, Bates

relies on Georgia's precedents providing for strict construction of deeds of trust to support its finding that Georgia courts would hold that HUD regulations clearly referenced in a deed as conditions precedent to the power to accelerate and foreclose may form the basis of a breach of contract action with all legally cognizable remedies available. Id. at 1132. Similarly, the Massachusetts cases recognizing that a breach of contract action may be based on the failure of an FHA mortgagee to conduct the pre-foreclosure face-to-face meeting rely on the settled Massachusetts principle that the mortgagee must strictly comply with the mortgage terms relating to the power of sale. Jose v. Wells Fargo Bank, N.A., 54 N.E. 3d 1130, 1132 & n.3 (Mass. App. Ct. 2016) (citing Pinti v. Emigrant Mortg. Co., 33 N.E. 3d 1213 (Mass. 2015)).

With these three approaches in mind, I return to the issue presented by this case: what would the Rhode Island Supreme Court do if faced with this question? The starting point for the analysis is that, like Georgia and Massachusetts, which both follow the third approach, Rhode Island has adopted the principle that a mortgagee must adhere to the standard of strict compliance with respect to conditions precedent to foreclosure and that a failure to comply renders the foreclosure sale void. Bucci, 68 A.3d at 1084-85 ("The power to sell under a mortgage or deed of trust is a matter of contract between the mortgagor and mortgagee under the conditions expressed in the instrument."); accord Boynton v. Fed. Hous. Fin. Agency, et al., C.A. No. 15-350-JJM, 2017 WL 4124240 (D.R.I. Sept. 15, 2017); Martins v. Fed. Hous. Fin. Agency, 214 F. Supp. 3d 163 (D.R.I. 2016); Demers, 511 B.R. 233. Mindful of the plain language in paragraph 9(d), read in light of the guidance from these decisions, I find that settled Rhode Island precedent supplies powerful support for the prediction that Rhode Island would adopt the third approach, which treats such a claim as a breach of contract that gives rise to appropriate remedies as contemplated by state contract law. See Mullins, 2011 WL 1298777, at *3 ("Quite

simply, plaintiffs are suing under a straightforward state law contract theory, alleging that defendants did not uphold their end of the contractual bargain.").

Also pertinent is that the Rhode Island Supreme Court's decisions regarding mortgage interpretation turn to Massachusetts case law to fill in the interstices in Rhode Island mortgage jurisprudence. See Cruz v. Mortg. Elec. Registration Sys, Inc., 108 A.3d 992, 997 (R.I. 2015) (looking to guidance from Massachusetts to develop law pertaining to standing to challenge mortgage assignments) (citing as guidance Wilson v. HSBC Mortg. Servs., Inc., 744 F.3d 1 (1st Cir. 2014) (applying Massachusetts law)); Bucci, 68 A.3d at 1087 ("we interpret the term 'mortgagee' in our statutes in a similar fashion as did the Supreme Judicial Court of Massachusetts") (citing as guidance Culhane v. Aurora Loan Servs. of Neb., 826 F. Supp. 2d 352 (D. Mass. 2011) (applying Massachusetts law), aff'd, 708 F.3d 282 (1st Cir. 2013), and Eaton v. Fed. Nat'l Mortg. Ass'n, 969 N.E. 2d 1118 (Mass. 2016)). Accordingly, it is appropriate for this Court to consider persuasive the relevant mortgage-law guidance from Massachusetts. See, e.g., Jose, 54 N.E. 3d at 1132 & n.3 (claim that foreclosure may be rendered invalid by mortgagee's failure to conduct pre-foreclosure face-to-face meeting survives summary judgment); Cook, 31 N.E. 3d at 1131 (mortgagor's claims to restore title and avoid eviction based on mortgagee's failure to comply with HUD regulations before foreclosing survive summary judgment).

Finally, the holding of the Superior Court in Miller v. Wells Fargo Bank is instructive. 2015 WL 1515942. In Miller, the Rhode Island Superior Court held that no cause of action arises from the mortgagee's failure to consider loan modification despite regulations requiring that it do so. Id. at *8-9. In so holding, the Superior Court not only sought guidance from Massachusetts, but also emphasized the absence of "contract terms which afford borrower any right or impose upon the Bank any obligation to modify a mortgage loan or to consider such

14

modification." Id. at *10 (citing Frappier v. Countrywide Home Loans, Inc., 750 F.3d 91, 97 (1st Cir. 2014), cert. denied, 135 S. Ct. 179 (2014)). The implication is plain: if the mortgage contract in Miller had mandated compliance with regulations addressing loan modification, the outcome of the case would have been different.

Based on the foregoing, and with appropriate deference to this Court's recent rulings in Ferreira, Peralta and Gonzalez,[8] I find that Rhode Island would follow the third approach consistent the Eleventh Circuit's well-reasoned decision in Bates, 768 F.3d at 1132, and with the guidance from Massachusetts, as articulated in Jose, 54 N.E.3d at 1132, and Cook, 31 N.E.3d at 1131, and recognize that the mortgagor may bring a breach of contract claim for damages and other remedies against a mortgagee that breaches its express contractual duty under paragraph 9(d) to conduct the pre-foreclosure face-to-face meeting as required by 24 C.F.R. § 203.604(b). I further find that Plaintiff's allegations regarding his claims for contract-based damages and other remedies, including the potential voiding of the foreclosure sale, are sufficient to conform to the plausibility standard set forth in Iqbal/Twombly – whether they will survive the factual scrutiny that summary judgment will bring to bear is an issue for another day. Consequently, I recommend that Defendant's motion to dismiss Count III of the complaint be denied.

A coda: an option that I do not endorse is to certify the question to the Rhode Island Supreme Court pursuant to Rhode Island Supreme Court Rule 6(a), which permits certification in cases with "no controlling precedent." R.I. Sup. Ct. Rules, Art. I, Rule 6. Although the Rhode Island courts have not spoken on the precise issue, I find that Rhode Island's law on the interpretation of mortgage contracts is sufficiently well developed to permit this Court to make the determination; therefore, I conclude that certification is not appropriate in this case. Am. States Ins. Co. v. LaFlam, 808 F. Supp. 2d 400, 402 (D.R.I. 2011) (citing Gilmore v. Citigroup,

---

[8] See n.4, *supra*.

15

Inc. (In re Citigroup), 535 F.3d 45, 62 (1st Cir. 2008)) ("When state law is sufficiently clear . . . to allow a federal court to predict its course, certification is both inappropriate and an unwarranted burden on the state court."); see In re Pereira, 791 F.3d 180, 181-82 (1st Cir. 2015) (question certified to Massachusetts Supreme Judicial Court because no state court had provided "clear guidance" on issue, which implicated "significant policy concerns better suited for resolution by" state court).

    C.    <u>Punitive Damages and Damages Based on Emotional Distress</u>

Citing O'Coin v. Woonsocket Inst. Trust Co., PNC Bank's motion to dismiss argues in passing that, if the breach of contract claim survives, the Court should nevertheless dismiss the contract-based claims for "emotional or punitive damages" (ECF No. 4-1 at 14 n.8) because such damages are not recoverable in a case based on breach of contract. 535 A.2d 1263, 1266 (R.I. 1988). However, O'Coin deals only with punitive damages, not those arising from emotional distress, and contemplates that they are available, albeit in the "most egregious circumstances." Id. With a complaint alleging that PNC Bank's conduct was unfair, oppressive and contrary to public policy, I decline to find that a mortgagee's wholesale disregard of HUD regulations intended to protect mortgagees and the public from unnecessary foreclosures is insufficiently "egregious" as a matter of law at the Fed. R. Civ. P. 12(b)(6) phase. See id. (based on summary judgment factual record, punitive damages may be available but "as a matter of law are not here present."); A.A.A. Pool Serv. & Supply, Inc., 395 A.2d at 726 ("we do not reach the question of whether punitive damages . . . may be awarded to the plaintiff").

As to the availability of damages based on emotional distress, more pertinent is § 353 of the Restatement (Second) of Contracts, which provides that, "Recovery for emotional disturbance will be excluded unless the breach also caused bodily harm or the contract or the

16

breach is of such a kind that serious emotional disturbance was a particularly likely result." Restatement (Second) of Contracts § 353 (1981). Consistent with this proposition, the Rhode Island Supreme Court has held that, while Rhode Island law generally does not permit recovery for emotional distress due to breach of contract, "such damages might be available in certain factual scenarios." Frisina v. Women & Infants Hosp. of R.I., No. CIV. A. 95-4037, 2002 WL 1288784, at *10 (R.I. Super. May 30, 2002); see also Jennings v. Nathanson, 404 F. Supp. 2d 380, 396 (D. Mass. 2005) (plaintiff may recover emotional damages if breach of contract was particularly likely to cause serious emotional disturbance). Further, in a tort-based case, the Rhode Island Supreme Court has acknowledged that interference with a homeowner's possession of his residence is a circumstance that may permit recovery for emotional consequences. Hawkins v. Scituate Oil Co., 723 A.2d 771, 773 (R.I. 1999). Based on these authorities, I find that the availability of damages based on emotional distress is an issue rightly addressed on a developed factual record at the summary judgment phase.

## IV.   CONCLUSION

For the reasons set forth above, I recommend that Defendant's Motion to Dismiss (ECF No. 4) be granted as to Count II of Plaintiff's complaint (ECF No. 1-1), but denied as to Count III.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Diaz-Rosado, 857 F.3d 89, 94 (1st Cir. 2017); Davet v. Maccarone, 973 F.2d 22, 31 (1st Cir. 1992).

17

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
October 17, 2017