**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **DAWARI DAN-HARRY**, on behalf of himself ) <br> and all others similarly situated, ) <br> ) <br>         Plaintiff, ) <br> ) <br>     vs. ) <br> ) <br> **PNC BANK, NATIONAL ASSOCIATION,** ) <br> ) <br>       Defendant. ) | Civil Action No. 1:17-cv-136 |

**MEMORANDUM IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT**
**OF PNC BANK**

Defendant, PNC Bank, National Association ("PNC"), through its attorneys, has moved

for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and in support

of that motion submits this memorandum.

**PRELIMINARY STATEMENT**

This Court should grant PNC summary judgment against Plaintiff, a former PNC customer

who has lived in his home – *rent free* – for more than six years, having failed to make a single

mortgage payment since December 2011.

Plaintiff has voluntarily dismissed Counts I and IV and this Court has previously dismissed

Count II of the Complaint. *See* ECF No. 12 (Sept. 29, 2017; Notice of Dismissal of Counts I and

IV) and ECF No. 21 (Feb. 27, 2018; accepting Report and Recommendation (ECF No. 13) and

dismissing Count II). As a result, the only remaining claim is set forth in Count III, in which

Plaintiff alleges a state-law claim for breach of contract based on PNC allegedly failing to conduct

a face-to-face pre-foreclosure meeting, as contemplated by 24 C.F.R. § 203.604(b).  For the

reasons set forth below, however, PNC is now entitled to summary judgment on Count III because

(i) the record establishes that PNC complied with the face-to-face requirement; and (ii) apart from such compliance, Plaintiff cannot show any resulting cognizable damages.

The facts are straightforward: Plaintiff obtained a mortgage loan from PNC's predecessor to purchase a home in Providence in 2005. Unfortunately for Plaintiff, he lost his job and could no longer make his mortgage payments. As noted, Plaintiff made his last mortgage payment in December 2011 and defaulted on the January 2012 payment. From that point forward, Plaintiff never paid another dollar to PNC (in either mortgage payments or use and occupancy payments) and *still apparently occupies the home today* while PNC pays his mortgage insurance and property taxes

After ten attempts to work out a loan modification or short sale with Plaintiff, PNC foreclosed on the property, and it was sold to a third party on January 23, 2017. Ignoring this long history of non-payment and attempted workouts, Plaintiff now claims that this foreclosure was wrongful because, back in 2012 when he first defaulted, PNC was obligated to hold a face-to-face meeting with Plaintiff as required by 24 C.F.R. § 203.604 (the "HUD Regulation"), a regulation which this Court earlier held, in denying PNC's motion to dismiss Count III, was incorporated by reference in Plaintiff's mortgage. Undisputed documentary evidence, however, shows that PNC did attempt to hold a face-to-face in full compliance with the HUD Regulation, and that, even if it had not, Plaintiff has not suffered damages. As such, this claim cannot stand.

## UNDISPUTED MATERIAL FACTS

The following material facts are undisputed:[1]

---

[1] The facts set forth here are also contained in PNC's separately filed Statement of Undisputed Facts In Support of Motion for Summary Judgment of PNC Bank.

1. Plaintiff obtained a mortgage loan from PNC's predecessor, National City Bank of Indiana, to purchase a home at 84 Corinth St in Providence. (Complaint ¶¶ 30, 31, ECF No. 1).

2. In conjunction with that loan (the "Mortgage Loan"), Plaintiff executed a mortgage agreement and promissory note in the amount of $203,000. (Complaint ¶¶ 30, 31, Mortgage, attached as Exhibit 1 to Declaration of Arthur F. Radke).

3. On December 31, 2008, PNC acquired National City Bank of Indiana and became the mortgagee under the Mortgage. (Complaint ¶ 35).

4. Plaintiff failed to make a payments on the loan when due in January 2012 and February 2012, and was in default under the Mortgage. (Plaintiff's Responses to Defendant's First Request for Admissions, No. 2, attached as Exhibit 2 to the Declaration of Arthur F. Radke).[2]

5. Paragraph 9(d) of the Mortgage states as follows:

**Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(Mortgage, attached as Exhibit 1 to Declaration of Arthur F. Radke).

6. The HUD regulation at issue states in relevant part as follows:

''(b) The mortgagee must have a face-to-face interview with the mortgagor, *or make a reasonable effort to arrange such a meeting*, before three full monthly installments due on the mortgage are unpaid. * * *

* * *

(d) A reasonable effort to arrange a face-to-face meeting with the mortgagor shall consist at a minimum of *one letter sent to the mortgagor* certified by the Postal Service as having been dispatched. Such a reasonable effort to arrange a face-to-face meeting shall also include at least *one trip to see the mortgagor* at the mortgaged property * * *.''

---

[2] The First Requests for Admissions of PNC Bank, National Association Directed to Plaintiff, Dawari Dan-Harry is attached as Exhibit 3 to the Declaration of Arthur F. Radke.

24 C.F.R. § 203.604 (2014) (emphases added).

7.      On February 27, 2012, PNC mailed a letter to Plaintiff by United States Postal Service certified mail attempting to arrange a face-to-face meeting with Plaintiff as required by the HUD Regulation. (Declaration of PNC Bank, Paragraph 10; letter attached as Exhibit 2 to Declaration of PNC Bank).

8.      On March 4, 2012, PNC attempted to make personal contact with Plaintiff and attempted to arrange a face-to-face meeting through its agent, J.M. Adjustment Services, LLC, by making a trip to the mortgaged property and leaving a second letter at the property. (Declaration of J.M. Adjustment Services, Paragraph 10; Exhibits 1 and 2 to Declaration of J.M. Adjustment Services).

9.      Plaintiff did not respond to PNC's reasonable efforts to arrange a face-to-face meeting but later requested a loan modification based on his claim that the mortgaged property had declined in value and that he was only making $400 per week. (Letter of Dawari D. Dan-Harry attached as Exhibit 4 to Declaration of Arthur F. Radke).[3]

10.     In total, following PNC's reasonable attempt to arrange a face-to-face meeting, PNC reviewed proposals to modify Plaintiff's mortgage on at least ten (10) occasions, but those attempts were unsuccessful either because Plaintiff failed to complete the required information, because the Borrower's income was insufficient, or because the short sale offer was too low. (Declaration of PNC Bank, Paragraph 13).

11.     PNC foreclosed on the property and it was sold to a third party on January 23, 2017. (Complaint ¶ 37).

---

[3] Plaintiff admitted to sending this letter in Plaintiff's Responses to Defendant's First Request for Admissions, attached as Exhibit 2 to Declaration of Arthur F. Radke.

12.     Plaintiff had no equity in the property at the time he defaulted. He cannot establish that he had enough funds to make any mortgage payments at the time. His non-monetary damages consisted only of "stress" for which he never sought any healthcare treatment. (Plaintiff's Responses to Defendant's First Request for Admissions, No. 12 and 15-19, attached as Exhibit 2 to the Declaration of Arthur F. Radke).

## APPLICABLE LEGAL STANDARDS

"Summary judgment is properly granted if the movant demonstrates 'there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Miranda–Rivera v. Toledo–Davila*, 813 F.3d 64, 69 (1st Cir. 2016) (citing Fed. R. Civ. P. 56(a)). "A 'genuine' dispute exists when a jury can reasonably interpret the evidence in the non-movant's favor." *Id.* "A 'material' fact is 'one that might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Vélez-Rivera v. Agosto-Alicea*, 437 F.3d 145, 150 (1st Cir. 2006)). In ruling on summary judgment, the court views the record evidence "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." *Feliciano de la Cruz v. El Conquistador Resort & Country Club*, 218 F.3d 1, 5 (1st Cir. 2000).

However, where the plaintiff has the burden of proof on an element of the claim, such as breach or damages, the plaintiff must produce evidence in response to a motion for summary judgment. "Essentially, Rule 56(c) mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Mottolo v. Fireman's Fund Ins. Co.*, 43 F.3d 723, 725 (1st Cir.1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

## ARGUMENT

The undisputed facts show that, contrary to Plaintiff's assertions, PNC did in fact comply with the HUD Regulation and the requirements of the Mortgage, and that summary judgment is proper on this basis alone. As discussed below, the HUD Regulation does *not* require a successful face-to-face meeting; it requires only a reasonable *attempt* to arrange that face-to-face meeting. Moreover, the HUD Regulation itself establishes a minimum standard for such a reasonable attempt, with which PNC has complied. Additionally, the undisputed facts illustrate (a) that the underlying purpose of the face-to-face meeting – to afford the borrower an opportunity to explore non-foreclosure alternatives – was fully satisfied here, and (b) that Plaintiff suffered no damages from PNC's alleged breach of the Mortgage. Therefore, even if the Court were to conclude that no reasonable attempt had been made – a conclusion which this Court certainly will not reach here – summary judgment is still proper in favor of PNC.

Therefore, as shown below, there is no reason for this case to proceed to trial; there are no facts that need to be tried; and judgment in favor of PNC is proper.

## I.     PNC is Entitled to Summary Judgment Based on Its Compliance with the HUD Regulation.

The facts here and PNC's entitlement to summary judgment on the remaining Count III could not be more clear. Based on the unambiguous language of the HUD Regulation itself, PNC did exactly what it was required to do. Within three months of the January 2012 default, PNC (a) sent a letter to Plaintiff requesting a face-to-face meeting, (b) sent an agent to personally contact Plaintiff and, when that contact was unsuccessful, (c) left a second letter on the property. Therefore, it complied with the HUD Regulation, complied with the Section 9(d) of the Mortgage, and did *not* breach the Mortgage by accelerating the debt and foreclosing on the Property.

Plaintiff's only answer to this is to deny that he *received* the letters. (*See, e.g.,* Plaintiff's Responses to Defendant's First Request for Admissions, No. 3 and 7, attached as Exhibit 2 to the Declaration of Arthur F. Radke). Even if true, however, this fact does not carry the day. There is no requirement of receipt by the defaulting borrower under the HUD Regulation. Thus, Plaintiff's alleged non-receipt is immaterial. The HUD Regulation does not require that the mortgagee must *make contact* with the borrower; it requires the mortgagee to send a letter and make a trip to the property to attempt to arrange a face-to-face meeting. Therefore, the undisputed material facts establish that PNC complied with the HUD Regulation and did not default under the Mortgage. *See, Grimaldi v. US Bank National Association,* C.A. No. 16-519 WES, 2018 WL 1997277 (D.R.I. Apr. 27, 2018).

The *Grimaldi* case is squarely on point. As here, the plaintiff claimed that the lender failed to comply with the above HUD Regulation. Ruling on the lender's motion for summary judgment, the Court granted summary judgment against the plaintiff because "the clear language" of the regulation required merely that the lender make a "'reasonable effort' to arrange a face-to-meeting with the mortgagor, as defined as sending a letter to the mortgagor and making a personal visit to the mortgagor's property, 'before three full monthly installments due on the mortgage are unpaid,'" and the lender proffered undisputed evidence that such reasonable attempts were made. *Id.*

In addition to PNC's compliance with the HUD Regulation, the undisputed facts confirm that PNC repeatedly attempted to avoid foreclosure over a five-year period.  The very purpose of the HUD Regulation is to assure that the mortgagee makes a reasonable attempt at loss mitigation prior to foreclosure.  The HUD Regulation refers expressly to 12 U.S.C. § 1715u as a basis for its statutory authority. That statute in relevant part states:

(a) Loss mitigation

Upon default or imminent default, as defined by the Secretary of any mortgage insured under this subchapter, *mortgagees shall engage in loss mitigation actions for the purpose of providing an alternative to foreclosure* (including but not limited to actions such as special forbearance, loan modification, preforeclosure sale, support for borrower housing counseling, subordinate lien resolution, borrower incentives, and deeds in lieu of foreclosure, as required, but not including assignment of mortgages to the Secretary under section 1710(a)(1)(A) of this title) or subsection (c),2 as provided in regulations by the Secretary. (Emphasis added)

Here, despite not responding to the initial request for a face-to-face meeting, Plaintiff was afforded repeated opportunities (at least ten) for loan modifications and a short sale over a five-year period prior to foreclosure. Thus, not only did PNC comply with the letter of the HUD Regulation, it has also complied with the underlying rationale for the regulation in the first place by offering multiple alternatives to foreclosure.

## II.   Plaintiff Cannot Point to Any Resulting Damages Cognizable under Rhode Island Law.

Likewise, Plaintiff admits that he suffered no monetary damages resulting from PNC's alleged breach. (*See* Undisputed Fact No. 12). This is an affirmative case brought by Plaintiff, not a defense to a foreclosure action. Therefore, it is Plaintiff's burden to show that he performed under the contract, which he admittedly did not, and that he sustained damages as a result of the alleged breach of contract. *See Petarca v. Fidelity and Cas. Ins. Co.*, 884 A.2d 406, 410 (affirming grant of summary judgment in favor of defendant and stating that the plaintiff "must not only prove both the existence and breach of a contract, he also must prove that the defendant's breach thereof caused him damages").

Plaintiff cannot establish that he had sufficient funds to meet his monthly obligations and make payments on his mortgage. (*See* Undisputed Fact No. 12). Moreover, he admits that at the time of his default he had no equity in the mortgaged property. (*Id.*). In fact, as is obvious from

8

the failed mitigation efforts, even if a face-to-face meeting had occurred, Plaintiff would not have qualified for loss mitigation. Thus, he has no damages and the foreclosure sale was legally the result of Plaintiff's own breach of contract, his inability to make mortgage loan payments, not any action by PNC. Plaintiff lost nothing monetarily by virtue of the foreclosure sale.

Nor can Plaintiff establish any cognizable *non-monetary* damages. As a matter of Rhode Island law, a creditor "will not be held liable when he has done no more than insist on his legal rights in a permissible way, even though such insistence is likely or even certain to annoy, disturb, or inconvenience the debtor or even cause him to suffer some emotional distress." *Champlin v. Washington Trust Co.*, 478 A.2d 985, 989 (R.I. 1984). In other words, if the only harm Plaintiff can allege is based on the fear that PNC was going to take action it was legally entitled to pursue, such claims are impermissible.

In fact, the only non-monetary damage Plaintiff *attempts* to point to is "significant stress due to the fact that his wife and children lived at the property." (*See* Undisputed Fact No. 12). Presumably Plaintiff is suggesting that the fact that his wife and children were in danger of being evicted from their home where the family had lived for years, rent free, somehow caused *him* stress. However, it is incontestable that this stress would have resulted to the same or *even greater degree* simply from the fear of eviction resulting from *Plaintiff's own failure* to make the mortgage payments as from any action *by PNC*. As noted above, PNC cooperated with Plaintiff in attempting to modify his loan or pursue a short sale on at least ten occasions. The lack of a single face-to-face meeting under the HUD Regulation could simply not have provided Plaintiff with any more comfort than he was afforded over the six years he continued to occupy the property free of charge. If Plaintiff experienced "stress," it had nothing to do with compliance with the HUD Regulation

and everything to do with his inability to meet his financial obligations. No non-monetary damages were caused by PNC here.

## CONCLUSION

For the reasons set forth above, this Court should find that PNC's facts as set forth in its Statement of Undisputed Facts have been established, that PNC has complied with 24 C.F.R. § 203.604 and, therefore, with Section 9(d) of Plaintiff's Mortgage, and that PNC is therefore entitled to summary judgment in its favor and against Plaintiff on the remaining Count III of the Complaint, dismissing this action with prejudice and awarding PNC its costs of suit and such other relief deemed just and proper.

Dated: June 29, 2018                                   Respectfully submitted,

**PNC BANK, NATIONAL ASSOCIATION**

*/s/ Arthur F. Radke*

Arthur F. Radke, Admitted *Pro Hac Vice*
Brett Natarelli, Admitted *Pro Hac Vice*
Manatt, Phelps & Phillips, LLP
20 N. Clark Street
Suite 3300
Chicago, IL 60602
(312) 626-1813
aradke@manatt.com
bnatarelli@manatt.com

*/s/ Harris K. Weiner*

Harris K. Weiner (#3779)
Salter, McGowan, Sylvia & Leonard, Inc.
321 S Main Street
Suite 301
Providence, RI 02903
(401)274-0300
hweiner@smsllaw.com

## CERTIFICATE OF SERVICE

I, Harris K. Weiner, hereby certify that on June 29, 2018 a copy of the foregoing document, filed through the CM/ECF system, will be sent electronically to all counsel of record.

*/s/ Harris K. Weiner*

Todd S. Dion, Esq. (#6852)
371 Broadway
Providence, RI 02909
401-353-1230 Phone
401-965-4131 Cell
401-353-1231 Fax
toddsdion@msn.com

320493210.7