# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| **DAWARI DAN-HARRY**, on behalf of himself and all others similarly situated,<br><br>*Plaintiff*<br><br>v.<br><br>**PNC BANK, NATIONAL ASSOCIATION**<br><br>*Defendant* | CA # 1:17-cv-136 |

### PLAINTIFF'S OPPOSITION TO DEFENDANT' MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

### INTRODUCTION

Plaintiff, Dawari Dan Harry, hereby opposes Defendant, PNC Bank's, Motion for Summary Judgment pursuant to Fed. R. Civ. 56. As grounds, Plaintiff states that there are genuine issues of material fact and that she is entitled to a determination by a fact finder of these material disputed facts. Plaintiff avers that: 1) the Plaintiff unequivocally denies ever receiving any face-to-face meeting notice in accordance with paragraph 9(d) of the mortgage; 2) the purported correspondence set forth as Exhibit by the Defendant in its' Statements of Undisputed Facts in Support of its' Motion for Summary Judgment purportedly sent by J.M Management Consultants did not substantially comply with Paragraph 9(d) of the Mortgage contract because it failed to inform the Plaintiff of his right to a face to face meeting as described in 24 CFR 203.604 and 3) damages can be shown as to the Defendant's failure to conduct a face-to face meeting because had a face-to-face meeting occurred, the Plaintiff would have avoided foreclosure, the loss of property interest, a higher principle balance, improper negative reporting

to credit bureaus; inappropriate fees and charges assessed to them, including broker price opinion fees, inspection fees, attorney's fees, "process management" fees, late fees and other charges associated with delinquency and default, and increased accrued interest.  Plaintiff respectfully request this Honorable Court deny Defendants Motion for Summary Judgment and set the matter down for trial.

## DISPUTED FACTUAL ALLEGATIONS

All FHA standard mortgage contracts at paragraph 9(d) state that regulations issued by the Secretary of Housing and Urban Development will limit a Lender's rights, in the case of payment defaults, to require immediate payment in full, and foreclose, if not paid. Paragraph 9(d) further states that the security instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.  At issue in this action is a Regulation codified in 24 CFR 203.604(b) which states that a mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid.  24 CFR 203.604(c) further states that a face-to-face meeting is not required if: **(1)** the mortgagor does not reside in the mortgaged property, **(2)** the mortgaged property is not within 200 miles of the mortgagee, its servicer, or a branch office of either, **(3)** the mortgagor has clearly indicated that he will not cooperate in the interview, **(4)** a repayment plan consistent with the mortgagor's circumstances is entered into to bring the mortgagor's account current thus making a meeting unnecessary, and payments thereunder are current, or **(5)** a reasonable effort to arrange a meeting is unsuccessful.  24 CFR 203.604(d) **additionally states that** a reasonable effort to arrange a face-to-face meeting with the mortgagor shall consist at a minimum of one letter sent to the mortgagor certified by the Postal Service as having been dispatched.  Such a reasonable effort to arrange a face-to-face meeting shall also

include at least one trip to see the mortgagor at the mortgaged property, unless the mortgaged property is more than 200 miles from the mortgagee, its servicer, or a branch office of either, or it is known that the mortgagor is not residing in the mortgaged property.

Representative Plaintiff Dawari Dan-Harry is the owner of real property located at 84 Corinth Street, Providence, RI 02907, which is a subject property referenced herein. On December 7, 2005, Plaintiff executed a mortgage and note in the amount of Two Hundred Three Thousand and 00/100 Dollars ($203,000.00) to Commonwealth United Mortgage, a Division of National City Bank of Indiana. (the "Dan-Harry Mortgage" and the "Dan-Harry Note"). Said mortgage was secured against the 311 Plainfield Street subject property and recorded in the City of Providence, Clerk's Office, Land Evidence Records in Book 7744 at Page 347 on December 12, 2005. The Dan-Harry Mortgage was designated as an "FHA" mortgage and noted as such on the mortgage itself on page one (1) with the "FHA case number" 4510882486-703.

Subsequently, after recording of the Dan-Harry Mortgage, National City became the Issuer of a pool of mortgages of which the Dan-Harry Mortgage was a part. Plaintiff herein alleges that all right title and interest in the note secured by the Dan-Harry Mortgage, was pooled, sold, and otherwise transferred to Ginnie Mae, who is in fact the Lender and holder of the note given by Plaintiff in return for the mortgage loan as noted herein. On December 31, 2008, PNC acquired National City and became mortgagee of the Dan-Harry Mortgage as successor in interest to National City. As a result of said acquisition, PNC also assumed Document Custodial duties for the Dan-Harry Mortgage and Note.

On or about December 6, 2016, PNC Bank, N.A. retained Harmon Law PC to foreclose the Dan-Harry Mortgage, and caused to be sent to Plaintiff a Notice of Mortgagee's Foreclosure Sale, stating a scheduled mortgagee's sale date of January 23, 2017. Defendant PNC Bank, N.A.

foreclosed and the subject property was sold at mortgagee's foreclosure sale to a third party bidder, on January 23, 2017. The foreclosure purportedly conducted by PNC Bank, N.A. is in breach of the mortgage contract at paragraph 9(d) and violation of 24 CFR 203.604(b) which states that a mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid. Plaintiff herein alleges that PNC Bank, N.A. did not have a face to face interview with him before three full monthly installments due on the mortgage were unpaid, and that PNC Bank, N.A. made no effort to arrange such a meeting. Plaintiff further alleges that his subject property is within 200 miles of a branch office of the Defendants[1]; and that he occupied and still occupies the mortgaged property as his primary residence; and he never clearly indicated to the Defendants that he would not cooperate with such an interview; and he did not enter into a repayment plan, where payments thereunder were current, consistent with his circumstances to bring his account current, thus making a meeting unnecessary pursuant to said regulation.

Plaintiff, members of the class and PNC formed valid contracts and Plaintiffs and members of the class were, are, and remain ready willing and able to perform under the contracts. Defendant breached the mortgage contracts of Plaintiff and members of the class by refusing to honor the terms of the mortgage contracts as stated at paragraph 9(d) which states in pertinent part;

> 9(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full, and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

---

[1] As example the Defendant has multiple branch offices which provide mortgage services located in New York City, NY with one such branch location at 1286 First Avenue, New York, NY 10021 which is 174 miles in driving distance from the Dan-Harry mortgaged property.

It is a regulation of the Secretary codified in 24 CFR 203.604(b) that:

> (b) The mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid... (See: 24 CFR .604(b)).

Defendant failed to have face to face meetings with Plaintiff and members of the class before three full monthly installments due on the mortgages were unpaid. Further, Defendant failed to make reasonable efforts to arrange such meetings with Plaintiff and members of the class. Plaintiff and members of the class have suffered harm and are threatened with additional harm from Defendant's breach, including but not limited to loss of property interest, higher principle balance, improper negative reporting to credit bureaus; inappropriate fees and charges assessed to them, including broker price opinion fees, inspection fees, attorney's fees, "process management" fees, late fees and other charges associated with delinquency and default, and increased accrued interest.

## SUMMARY JUDGMENT STANDARD

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Johnson v. Gordon, 409 F.3d 12, 16-17 (1st Cir. 2005) [quoting Garside v. Osco Grug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)]. The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the Court must view all evidence and related inferences in the light most favorable to the nonmoving party. Tavares v. Union Corp., 17 F.Supp 2d 69, 74 (D.R.I. 1998) [citing Continental Casualty Co. v. Canadian Universal Ins. Co., 924 F. 2d 370, 373 (1st Cir. 1991)].

"Summary Judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law based on the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits. A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation. To defeat a motion for summary judgment, evidence offered by the non-movant 'must be significantly probative of specific facts.'" Prescott v. Higgins, 538 F.3d 32, 40 (1st Cir. 2008)

## ARGUMENT

I. **A Material Question Of Fact Exists As To Whether Or Not A Face-To-Face Meeting Notice Was Sent By The Defendants Via Certified Mail Because The Tracking Number Associated With The Purported Notice The Defendants Claim Was Sent Fails To Affirmatively Indicate That The Notice Was Sent And The Plaintiff Denies Via Sworn Affidavit Of Ever Receiving Any Such Notice.**

24 CFR 203.604 required that the Defendants send a notice that the Plaintiff had an opportunity to have a face to face meeting via certified mail. The requirement that the notice be sent via certified mail therefore shifts the burden of proof on the Defendants to show that the notice was in fact sent via certified mail and not just that the notice was sent in the mail. *Compare* Hutter v. Hartford Accident & Indemnity Company, 710 A. 2d 665, 666 (RI. 1995) [(*See, e.g.*, Colangelo v. Colangelo, 46 R.I. 138, 140, 125 A. 285, 286 (1924) ("The party against whom [a] presumption operates has the burden of producing satisfactory evidence to rebut the presumption. When this has been done the presumption becomes inoperative, and is laid aside, and the case proceeds as it would if no presumption had been invoked."). All presumptions do not disappear when countervailing evidence is presented. For example, the presumption of delivery that accompanies the placement of mail into a mailbox would not

disappear. *Compare* R.I.R. Evid. 304(a) *with* R.I.R. Evid. 306(a) (effects of introduction of countervailing evidence on different types of presumptions)"].

Plaintiff avers that the requirement that the notice be sent via certified mail has not been shown by the Defendants and that a question of fact exists as to whether or not the Defendants sent such notice via certified mail. The Defendants have presented in their motion a letter dated February 27, 2012 with USPS tracking number "71078381654118236647" that purports substantial compliance with 24 CFR 203.604 and paragraph 9(d) of the mortgage. (Declaration of PNC Bank, Paragraph 10; letter attached as Exhibit 2 to Declaration of PNC Bank). A search of the USPS tracking number on the face-to face meeting notice submitted by the Defendants', however, states "Label Created, not yet in system". (See Ex. 1 to Decl. of Pl's Counsel Todd S. Dion, Esq.). Therefore the purported notice fails to show compliance with 24CFR 203.604(b) because a certification "by the Postal Service as having been dispatched" has not been shown.

In addition the Defendants have presented an affidavit of a Jean Sexton, Vice President of PNC Bank, that fails to state with any first-hand personal knowledge that a certified notice was in fact sent. Rather the affidavit of Ms. Sexton is only based on business records and procedures and only contains an assertion that "there is nothing… that indicates that this procedure was deviated from in any manner." (See Dec. of PNC Bank at #12). 24 CFR 203.604(b) required that the Defendant send "one letter. . . certified by the Postal Service as having been dispatched". In light of the lack of indication from the USPS tracking system that the purported letter was in fact "dispatched", the Plaintiff asserts that this requirement of 24 CFR 203.604(b) has not been shown here and a question of fact exists as to whether or not Defendants complied with this requirement. Furthermore, the Plaintiff denies via sworn affidavit of ever receiving any certified letter purporting to notify him of an opportunity to have a face-to-face meeting. (See Plaintiff's

Affidavit #s 10, 11). Plaintiff avers that in light of the Plaintiff's sworn Affidavit stating that he never received any such face-to-face meeting notice and the lack of tracking details directly from USPS stating that the face-to-face meeting notice was sent indicates a question of fact as to whether or not the face-to-face meeting notice was in fact sent in accordance with 24 CFR 203.604 and paragraph 9(d) of the Mortgage.

> II. **A Question Of Material Fact Exists As To Whether Or Not The Defendant Made A Trip To The Property For The Purpose Of Having A Face-To Face Meeting With The Defendant And The Plaintiff Denies Via Sworn Affidavit Of Receiving Any Such Notice Left At The Door Of The Property.**

24 CFR 203.604 also requires that the Defendant show that it conducted "one trip to see the mortgagor at the mortgaged property" for the purposes of conducting a face-to-face meeting to discuss loss mitigation options. Plaintiff asserts that a comparison to this Honorable Court's recent decision in Grimaldi v. US Bank Nat'l Ass'n, et al, (CA# 1:16-cv-00519 April 27, 2018) is particularly instructive on this issue and that this case is clearly distinguishable. In Grimaldi this Court granted summary judgment to the defendant bank when it was shown via shown affidavit and an exhibit of the notice left in the mailbox of the mortgaged property that a trip to the mortgaged property for the purpose of conducting a face-to-face meeting was accomplished. In Grimaldi the defendant bank presented an affidavit from an individual named Cliff Dunnan who swore under the penalties of perjury that he appeared in person on a specific date, "knocked loudly", rang the doorbell 2 times and left a letter in the mailbox that specifically stated that he was there for the purpose of requesting a face-to-face interview pursuant to 24 CFR 203.604. In this case, however, no such affidavit based on first-hand personal knowledge of a trip to the property has been presented. Rather the Defendant has presented an affidavit of a Ryan Kojadulian of J.M. Adjustment Services based on second-hand knowledge via business records that a "Field Visit" was conducted at the Property. Although the Affidavit of Mr. Kojadulian

8

states that one of the services JM Adjustment Services provided for the Defendant was to contact persons to offer the opportunity to participate in a face to face meeting, the Affidavit fails to mention JM Adjustment Services qualifications or authority to conduct a face-to-face meeting for the purpose of resolving mortgage delinquencies.  The "Field Visit Summary Sheet" presented as Exhibit 1 to Mr. Kojadulian's Affidavit fails to state who conducted the "Field Visit" and for what purpose.  Nevertheless Mr. Kojadulian states that a "Jayson Williams" performed the "Field Visit" and that he worked for the company from June 2011 to July 2015.  There is no affidavit from "Jayson Williams" or any independent supporting documentation presented showing that Mr. Williams conducted the "Field Visit".  Furthermore, unlike the notice presented in Grimaldi that specifically stated that the trip to the property was conducted for the purpose of conducting a face-to-face interview, in this case the purported notice that the Defendant claims was left at the door contains no mention whatsoever of a face-to-face meeting and only contains three short sentences stating that the Plaintiff contact PNC Mortgage and that it is important that the Plaintiff respond to the letter immediately.

As the Plaintiff has stated previously in his Opposition to the Defendant's previous Motion to Dismiss, the Rhode Island Supreme Court has interpreted mortgage related terms in a similar fashion as the Supreme Judicial Court of Massachusetts, and often looks to Massachusetts law when necessary to resolve mortgage foreclosure issues.  See, e.g., Cruz v. Mortg. Elec. Registration Sys., 108 A.3d 992 (R.I. 2015) (relying on cases from United States Court of Appeals for the first Circuit that originated in Massachusetts and applied Massachusetts law); Bucci v. Lehman Bros. Bank, 68 A.3d 1069, 1086-87 (R.I. 2013) (reviewing foreclosure-related Massachusetts statutes and cases).  Due to the lack of substantive law on this issue and in light of Rhode Island's similarity to Massachusetts cases on the subject of mortgage and

foreclosure law, Plaintiff must mention in a persuasive manner a decision of the Western Housing Court of Massachusetts in the post-foreclosure eviction case of <u>Freedom Mortgage Corp. v. Newsome</u>, (Docket # 12-SP-2461, Fein, J. Western Housing Court, September 1, 2017). In <u>Newsome</u> the Court rescinded a foreclosure not only because the attempt to make a trip to the property was conducted outside of the loan being three months unpaid but also because there was "no evidence that the agent who went to the property . . . did so for the purpose of arranging a face-to-face meeting, or with authority ro conduct a face-to-face meeting. . ." and because the letters that were purportedly left at the property did not "reference or invite a face-to-face meeting, but rather a phone call. . .".

The <u>Newsome</u> decision was mindful to reference the FHA Handbook which states that a face-to-face interview should be with a "mortgage employee" to "determine the cause of the default, obtain financial information, establish a repayment schedule and prevent foreclosure by influencing the payment habits of mortgagors." <u>Newsome</u> at p. 6 *citing* FHA Handbook 4330.1 Rev-5, § 7-7(C)(1) (1994) and the Mass. Appeals Court decision of <u>Wells Fargo Bank, N.A. v. Cook</u>, 87 Mass. App. Ct. at 382, 388 (2015) which stated that "The HUD Handbook makes clear that representatives conducting the face-to-face interview must have the authority to propose and accept reasonable repayment plans because the interview has little value if the mortgagee's representative must take proposals back to a superior for a decision.". As stated earlier the Affidavit of Mr. Kojadulian of JM Adjustment Services fails to mention JM Adjustment Services' qualifications or authority to conduct a face-to-face meeting for the purpose of resolving mortgage delinquencies in accordance with the above requirements of FHA and HUD. Rather the Affidavit simply states that one of the services JM performs is contacting persons who have mortgage loans serviced by PNC Bank who PNC is required to contact in order to offer the

opportunity to participate in a face-to-face meeting. (Dec. of J.M. Adjustment Aff of Mr. Kojadulian at #6). Plaintiff avers that the Defendant failed to comply with the trip to the property requirement as laid out and described by FHA because the above referenced Handbook section specifically guards against the exact type of meaningless contact purported to have been made in this case. There is no assertion by the Defendant that J.M. Adjustment Services had any authority or power whatsoever to "determine the cause of the default, obtain financial information, establish a repayment schedule and prevent foreclosure by influencing the payment habits of mortgagors." in accordance with FHA Handbook 4330.1 Rev-5, § 7-7(C)(1) (1994). As set forth by the FHA Handbook the purpose of the trip to the house was not to just give a notice by the Defendant saying call us but to have a meaningful discussion with an employee or agent of the Defendant with the authority to actually help the Defendant avoid foreclosure. That has clearly not been presented in the Defendants Motion for Summary Judgment.

Plaintiff denies ever receiving any notice of a face-to-face meeting by J.M. Adjustment Services or PNC Bank either by mail or left at the door of the property (Plaintiff's Affidavit at 10, 11). The letter Defendant is alleging was left at the property door on March 4, 2012, dated March 1, 2012 and identified as Exhibit 2 to Mr. Kojadulian's Affidavit fails to mention Plaintiff's right to a face-to-face meeting and Defendant admits that no one was at the property during this alleged trip to the property. The letter allegedly left at the property door is from PNC not J.M. Adjustment Services and the letter fails to mention the letter's purpose and only asks that the Plaintiff call PNC. It is unclear whether or not this letter was for the purpose of arranging a face-to-face meeting with the Plaintiff. Furthermore, the alleged trip to the property was made on March 4, 2012 which was beyond the mortgage being unpaid for 3 months contrary to the regulation of the HUD Secretary 24 CFR 203.604. Therefore the Plaintiff respectfully

request that the Court find that in light of the above a disputed fact exists as to whether or not a true trip to the property was conducted with 3 months of the mortgage being unpaid in accordance with 24 CFR 203.604 and its purpose and meaning.

> **III.   Damages Can Be Shown Because Had A Face-To-Face Meeting Occurred, The Plaintiff Would Have Avoided Foreclosure And The Loss of Equity In Her Home.**

The Plaintiff asserts among other remedies that he was damaged by the Defendant's breach of duty including without limitation, loss of equity, lost opportunities to work-out his mortgage delinquency, and by imposition of inappropriate foreclosure fees and costs on his account and also asks for a declaratory judgment determining that the foreclosure of his property be void. (Plaintiff's Complaint at #93 and 95. The Plaintiff sets forth that as a condition precedent to acceleration and foreclosure the Defendant's "failure to comply with 24 CFR 203.604(b) deprived it of the right to invoke the statutory power of sale required to foreclose and the foreclosure was void ab initio". Everbank v. Chacon, 92 Mass. App. Ct. 1101 (2017). Therefore since the parties had expressly agreed in the mortgage that acceleration or foreclosure is not permitted if not permitted by regulations of the Secretary the Defendant had not acquired the right to accelerate payment and take away the Plaintiff's equity in her home. (See Squire v. Virginia Housing Dev. Auth., 758 S.E.2d 55 (Va. 2014) ["because the mortgagee failed to give the required notice, it 'had not acquired the right to accelerate payment'. Thus we affirmed the trial court's judgment awarding damages to the mortgagor"; "damages representing her loss of equity in her real property after the mortgagee had foreclosed" citing Bayview Loan Servicing, LLC v. Simmons, 275 Va. 114, 654 S.E.2d 898 (2008)]; Mathews v. PHH Mortgage, 724 S.E.2d 196, 199-200 (Va. 2012) ("the fact that a borrower is in arrears does not allow the trustee to circumvent the conditions precedent"; "by its nature, the deed of trust is a contract in which the

parties have agreed that material breach of the note by non-payment will not deprive borrowers of their rights to enforce the conditions precedent")

## CONCLUSION

WHEREFORE, in light of the foregoing, Plaintiff has shown that there are issues of material fact with respect to his claims for breach of contract. As such, Plaintiff is entitled to a judgment denying Defendant's motion for summary judgment.

Respectfully submitted,
Plaintiff, Dawari Dan Harry,
By his attorney,


/s/ Todd S. Dion, Esq._____
Todd S. Dion, Esq. (6852)
681 Park Avenue, Suite 24
Cranston, RI 02910
401-965-4131 Phone
401-270-2202 Fax
toddsdion@msn.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 8, 2018.

/s/ Todd S. Dion_____
Todd S. Dion
