**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **DAWARI DAN-HARRY**, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>**PNC BANK, NATIONAL ASSOCIATION,**<br><br>Defendant. | Civil Action No. 1:17-cv-136-WES-PAS |

**REPLY MEMORANDUM IN SUPPORT OF
PNC BANK'S MOTION FOR SUMMARY JUDGMENT**

PNC has moved for summary judgment on the sole remaining Count of Plaintiff's Complaint – a state law claim for breach of contract. (ECF No. 28). Plaintiff's opposition (ECF No. 36) raises just three arguments: (1) that Plaintiff's denial of receipt of the required certified letter and other defects are sufficient to preclude summary judgment even though PNC's certified mailing establishes compliance with the 24 C.F.R. § 203.604(d) (the "Regulation" or the "HUD Regulation"); (2) that there were various defects in the process by which PNC sent its representative to Plaintiff's property even though none of these purported defects are recognized in the Regulation; and (3) that Plaintiff has been damaged because he would have somehow avoided foreclosure even though there is zero evidence of his capability of doing so. Each argument is addressed below.

**I.     PNC's Evidence that It Complied with 24 CFR 203.604(d) by Sending A Certified Letter to Plaintiff Is Undisputed.**

In its motion for summary judgment, PNC established that it sent the required certified letter regarding the face-to-face meeting under 24 C.F.R. § 203.604(d) ("subsection (d)") by submitting the PNC Declaration as part of its motion for summary judgment. (ECF No. 32).

1

Plaintiff raises three objections to the conclusiveness of this proof: (A) he has created a disputed question of fact through his attorney's declaration relating the United States Postal Service ("USPS") website tracking program, (B) the PNC Declaration should have been made by a person with personal knowledge of the actual mailing of the letter six years ago, and (C) he has created a disputed question of fact by submitting an affidavit stating that he did not receive the certified letter. As discussed below, none of Plaintiff's objections are well taken.

### A. Plaintiff's Proffered Inference from the USPS Tracking Program is Rank Speculation.

Plaintiff asserts that when his attorney typed in the "tracking number" contained on the certified letter in the USPS tracking program on its website, the phrase "Label created, not yet in system" was displayed. (Resp. at 7). Based on this purported "fact," Plaintiff argues that there is no proof of certified mailing. The assertion of this "fact," however, does not create a disputed question of material fact sufficient to defeat PNC's motion, for at least two reasons:

*First*, to address the obvious, there is nothing in the Regulation requiring that proof of mailing of the letter be established by evidence from the USPS website tracking program. In the absence of any such requirement, there is nothing inherently defective about PNC's proof of mailing through the PNC Declaration. Therefore, PNC has submitted admissible evidence of the sending of the face-to-face letter in support of its motion.

*Second,* once PNC provided proof of certified mailing, the burden shifted to Plaintiff to come forward with *admissible evidence* disputing PNC's evidence, (Fed. R. Civ. P. 56(c, e)), and such evidence must be "sufficiently probative that, if it is credited, a factfinder could resolve the case in favor of the nonmovant." Plaintiff, however, has offered no such evidence. Plaintiff's "evidence" offers up rank speculation on the results obtained from the website tracking search. The capabilities and limitations of the USPS website tracking program are not self-evident, and

Plaintiff has not attempted by competent evidence to establish such capabilities and limitations. Nor has Plaintiff offered any evidence of what the phrase "Label created, not yet in system" means. Without such supporting evidence, any conclusions that this Court might draw from the single "fact" asserted by Plaintiff would be pure speculation. In short, Plaintiff cannot manufacture a question of fact by introducing an unexplained result from an unexplained process and invite the Court to speculate as to what that unexplained result might imply.[1] *Ferro v. Rhode Island Dept. of Transp. Ex rel. Lewis*, 2 F.Supp. 3d 150, 156 ("A properly supported summary judgment motion cannot be defeated by relying upon conclusory allegations, improbable inferences, acrimonious invective, or rank speculation." *quoting Ahern v. Shinseki*, 629 F.3d 49, 54 (1st Cir.2010)).

### B.   There is no Requirement of Personal Knowledge of the Actual Mailing.

Having failed to introduce evidence that contradicts the PNC Declaration, Plaintiff seemingly attempts to attack the evidentiary value of the declaration itself. (Resp. at 7). In doing so, however, Plaintiff does *not* argue that the PNC Declaration is inadmissible, but rather argues that the declarant, Jean Sexton, a Vice President of PNC Bank, did not have "first-hand personal knowledge" that the letter was sent, but instead bases her testimony on "business records and procedures". (*Id.*) Plaintiff does not, however, offer a single case to support the contention that an affidavit of a person personally witnessing a six year old mailing is necessary, and Plaintiff is mistaken as a matter of law. The reason is obvious: No one person at PNC, a large national bank,

---

[1] In fact, the USPS website tracking program likely cannot be utilized to track a six-year old letter. According to the USPS website, letters can only be currently tracked with the program for 120 days. Thus, resort to this program to ascertain the status of a 6-year old letter is presumably futile. http://faq.usps.com/?articleId=221132 Moreover, it is apparently the case that tracking numbers are "recycled" by the USPS after a period of time so it is not even reasonable to conclude that entering the 6-year old tracking number would ascertain information about the letter at issue here. In any event, if Plaintiff wants to rely on this tracking program as evidence to contradict the PNC Declaration, it is his burden to show the Court how it is relevant for that purpose, not PNC's burden to disprove it.

will have any recollection of the mailing of a single customer letter over six years ago. That is why the Federal Rules of Evidence permit proof of facts, such as the mailing of a letter, by showing that (a) a company has regular procedures covering such event and (b) there is no indication from the business records that those procedures were not followed with respect to the event at issue. *See, e.g., Underwood v. Wells Fargo Home Mortgage, Inc.,* Case No. 16-10226, 2016 WL 3182022, *3 (E.D. Mich. Jun 8, 2016) ("In particular, companies may establish mailing with 'proof of a business system of preparing and mailing letters, and compliance with such a custom in the particular instance.'") (*quoting Simpson v. Jefferson Standard Life ins. Co.,* 465 F.2d 1320,1324 (6th Cir. 1972)). That is exactly what is permitted under the Federal Rules of Evidence and what the PNC Declaration does here.[2]

### C. Plaintiff's Receipt of the Certified Letter is Immaterial.

Plaintiff submits his own affidavit in which he denies have "received" the certified letter. (Resp. at 7-8). As fully discussed in PNC's supporting memorandum, this fact is simply irrelevant. The issue is whether PNC sent the certified letter, not whether Plaintiff received it, and Plaintiff's affidavit does not create an issue of fact here. (PNC Memo at 7, ECF No. 29).

Therefore, PNC's proof that it sent a certified letter to Plaintiff in compliance with the Regulation is undisputed here. Plaintiff's purported evidence does not create a question of fact to defeat summary judgment.

---

[2] PNC is not relying in any way here on what is commonly referred to as the "mailbox rule." That is a rule that addresses whether a mailing can be deemed "received" based on the fact that it was properly mailed. As addressed in the next section, the only issue here is whether the certified letter was mailed.

**II.    PNC's Evidence that It Complied with 24 CFR 203.604 by Making One Trip to the Property Is Undisputed.**

By submitting the J.M. Adjustments Declaration (ECF No. 33) as part of its motion for summary judgment, PNC has established that it made the required trip to the property to arrange the face-to-face meeting under subsection (d). 24 CFR 203.604(d). Plaintiff raises four objections to this evidence: (A) the Regulation requires that the person making the trip to the property be prepared to immediately conduct the face-to-face meeting, and there is no evidence of that fact; (B) the evidence of the trip to the property should have been by the direct testimony of the person making the trip, (C) the content of the letter left by the person making the trip to the property should have referred expressly to a "face-to-face meeting," and (D) the trip to the property was outside of the time requirements of the Regulation. As discussed below, none of these objections is well taken, and summary judgment is proper here.

**A.    There is no requirement that the person making a trip to the property is prepared to conduct the face-to-face meeting.**

Plaintiff's first argument is that the Regulation requires that the one trip to visit the property to satisfy the attempt to arrange a face-to-face meeting requirement must be by a person who is then and there ready and qualified to *conduct* the face-to-face meeting, and that PNC's evidence of this attempt, the J.M. Adjustments Declaration, does not establish that fact. (Resp. at 8). Plaintiff's reading of the Regulation is incorrect. 24 CFR 203.604(d) provides:

> A reasonable effort *to arrange* a face-to-face meeting with the mortgagor shall consist at a minimum of one letter sent to the mortgagor certified by the Postal Service as having been dispatched. Such a reasonable effort *to arrange* a face-to-face meeting shall also include at least one trip to see the mortgagor at the mortgaged property, unless the mortgaged property is more than 200 miles from the mortgagee, its servicer, or a branch office of either, or it is known that the mortgagor is not residing in the mortgaged property.

(Emphasis added). Contrary to Plaintiff's position, subsection (d) neither expressly states that the trip must be made by a person ready and able to conduct the face-to-face meeting, nor would that

be a fair implication from the language. Subsection (d) requires that two actions must be undertaken *to arrange* that meeting; (i) a certified letter must be sent and (ii) a trip to the property must be made. There is nothing in subsection (d) that suggests that the face-to-face meeting must be *conducted* at the very time of the trip to the property for purposes of *arrangement,* or that the person making the trip must be ready and able to conduct it. Based on the express language of the Regulation, the trip, like the certified letter, is intended only *to arrange* the meeting.[3]

Not only does subsection (d) *not* require that the face-to-face meeting be held simultaneously with the initial trip to the property, such a requirement would be of very little utility to the mortgagor. The whole point of the face-to-face meeting, as acknowledged by Plaintiff (Resp. at 10), is to discuss meaningfully with the mortgagor what his or her loan modification options are. In order to do this, there must be an informed exchange between the mortgagor and the representative. It is hard to conceive of a situation in which a representative would arrive at the mortgagor's door – without a pre-arranged appointment – and find the mortgagor in a position to then and there exchange relevant information and be prepared to explore modification options. That scenario does not make sense and is not contemplated by subsection (d). What does make sense, and what is consistent with the Regulation, is that the representative will show up at the property, explain to the mortgagor his or her right to a face-to-face meeting and what that will entail, and arrange for a subsequent face-to-face meeting.

The case cited by Plaintiff and attached as an exhibit, *Freedom Mortgage Corp. v. Newsome,* (Docket # 12-SP-2461, Fein, J. Western Housing Court September 1, 2017), to support this theory is not persuasive because the language of the HUD Regulation does not require "that

---

[3] Contrary to Plaintiff's representation, this Court's opinion in the *Grimaldi* case does not suggest that the person taking the trip to the property must be ready to immediately hold the face-to-face meeting.

the agent who went to the property" demonstrate that he or she has "the authority to conduct a face-to-face meeting." Nor does the *Newsome* court even attempt to tie those requirements to the Regulation. Moreover, the court's subsequent discussion of what is required in the face-to-face meeting does not support the conclusion that the person making the trip to the property was the person required to conduct the described face-to-face meeting. *Newsome* has no persuasive value.[4] Furthermore, if there were any more persuasive cases in existence than *Newsome*, Plaintiff presumably would have presented them to this Court. Therefore, the fact that the J.M. Adjustments Declaration does not affirmatively state that the representative was prepared to discuss modification possibilities immediately does not create a *material* issue of fact here preventing summary judgment in favor of PNC.

**B.    There is no requirement that the person making the trip to the property personally testify to that trip.**

Plaintiff likewise argues that PNC's evidence of compliance with trip to the property requirement of subsection (d) is insufficient because it is based on the records and procedures of J.M. Adjustments, not on the personal knowledge of the person who made the trip to the property. (Resp. 8-9). Again, as with the PNC Declaration discussed above, Plaintiff does *not* argue that the J.M Adjustments Declaration is inadmissible, rather he argues only that a different declaration from a different person is required. Again, Plaintiff is incorrect. The J.M. Adjustments Declaration establishes what the company's regular practices and business records consist of and, based on those regular practices and business records, reaches the factual conclusion that the trip was made by Jayson Williams on March 4, 2012 with the results as set forth on the Field Visit Summary

---

[4] Obviously, *Newsome* is also factually distinguishable. Here Plaintiff was not present at the time of the trip to his property and whether the representative was prepared to conduct a face-to-face meeting immediately is inconsequential. Plaintiff cannot possibly show damages as a result.

7

Sheet. Under Federal Rules Evidence 406 and 803(6), this is a permissible method of establishing the relevant facts here. To hold that the declaration of the person making the trip to the property some six years later when he is no longer employed by the company (and unlikely in any event to have any personal recollection of an apparently routine trip) would be contrary to the rules of evidence. The lack of a declaration from Jayson Williams personally is not grounds to deny summary judgment in PNC's favor.

### C. There is no requirement that a second letter be left at the property or that its contents expressly reference a face-to-face meeting.

Next, Plaintiff objects to the content of the letter left by Jayson Williams at Plaintiff's door and declares (i) Plaintiff never received that letter and (ii) the letter requests the mortgagor to contact PNC but does not expressly refer to a face-to-face meeting. (Resp. at 11).

For all the reasons described above, the bare denial of receipt of the letter is insufficient. Moreover, nothing in the HUD Regulation requires a second letter at all, let alone a letter containing an express reference to a face-to-face meeting. PNC's obligation under subsection (d) was satisfied by the trip itself, and no follow-up letter was required. In fact, PNC attempted to do *more* than what was strictly required under the Regulation by leaving a second letter, and the fact that it did not expressly reference a "face-to-face" meeting is of no moment. Moreover, Plaintiff obviously received the message, or at least proceeded as though he did, as it is undisputed that he took advantage of *ten l*oan modification opportunities to avoid foreclosure during the following five years.

### D. The trip to the property was well within the time requirements of the Regulation.

Finally, Plaintiff asserts in conclusory fashion, in a single sentence, and without explanation or support, that PNC's conduct violated the HUD Regulation because PNC's "trip to

the property was made on March 4, 2012 which was beyond the mortgage being unpaid for 3 months. . .". (Resp. at 11). Such a bald assertion does not carry Plaintiff's burden on this motion. In fact, the trip was plainly timely because the Note provides that the payments (due on the first of the month) are not deemed unpaid and not subject to penalty until the 15th of the month. Thus, while the March installment (the third unpaid installment) was due on March 1, it was not actually in an "unpaid" status until March 15. Moreover, the FHA Handbook provides that a loan is not considered in default until 30 days after payment is due, FHA Handbook 4330.1 Rev. 5, § 7-2(E), meaning that the March payment was not unpaid until March 30.

Further, the attempts to arrange the face-to-face meeting began with the sending of the certified letter on February 27 – before the March payment was even due. Plaintiff presents no regulation, case law, or other support for the proposition that the efforts to arrange the face-to-face meeting must be *completed* before the due date of the third missed payment. Moreover, Plaintiff simply cannot circumvent the fact that, years prior to foreclosure, he was afforded opportunities to modify his loan and can show no damages resulting from the timing of the trip to the property. Therefore, there is no basis for denying PNC's motion for summary judgment based on the timing of the trip to the property.

**III.     Plaintiff's Assertion that there is Evidence of Damages in the Record is Incorrect.**

Finally, Plaintiff claims that there is evidence of damages in the record, but his so-called "evidence" is either non-existent or purely speculative. As shown in PNC's supporting memorandum, because Plaintiff's sole remaining claim here is for breach of contract, he must establish damages as an essential element of that claim. (PNC Memo at 8-10). However, he has failed to substantiate any such damages, and the motion for summary judgment should be granted for this reason alone. Plaintiff asserts in his Response that he was damaged insofar as he lost equity

9

(despite admitting he had none), lost opportunity to work-out his delinquency (despite uncontroverted evidence that he was given ten opportunities to do so and was unable to do so), and was charged with foreclosure fees and costs (despite admitting he paid none). (Resp. at 12). He cites to only one boilerplate citation to his complaint to support these damages; a tactic he cannot rely on at this stage of the proceedings. *Celotex v. Catrett*, 477 U.S. 317, 324 (1986) (nonmoving party is required "to go *beyond the pleadings* … [to] designate specific facts showing that there is a genuine issue for trial") (emphasis added).

Moreover, even in his response to PNC's Statement of Uncontested Facts, Plaintiff effectively admits that he has no damages.

> 12. Plaintiff had no equity in the property at the time he defaulted. He cannot establish that he had enough funds to make any mortgage payments at the time. His non-monetary damages consisted only of "stress" for which he never sought any healthcare treatment. (Plaintiff's Responses to Defendant's first Request for Admissions, No. 12 and 15-19, attached as Exhibit 2 to the Declaration of Arthur F. Radke).
>
> **Plaintiff's Response**: Disputed as to Plaintiff's claim of non-monetary damages because the loss of Plaintiff's home was included in his non-monetary damages.

The purported non-monetary damage connected with the "loss of his home" is unintelligible and, in any event, is unsupported by any citation to the record. If there is some other type of "loss" incurred in losing his home, other than the admittedly non-existent monetary loss, it is incumbent upon Plaintiff to explain that loss and show that it is both legally permitted under Rhode Island law and supported by facts in the record. He has failed to do so. Because Plaintiff has not presented any evidence of any recoverable monetary or non-monetary loss here, regardless of PNC's compliance with the Regulation, Plaintiff's claim for breach of contract cannot stand, and summary judgment is proper.

## CONCLUSION

In conclusion, PNC has demonstrated that it fully complied with the requirements of 24 CFR 203.604(d) to make reasonable attempts to arrange a face-to-face meeting. Plaintiff in response has failed to point to any material fact that is either unaccounted for by PNC or in dispute. Indeed, Plaintiff has admitted that he was afforded all the loan modification efforts that he could possibly have warranted and that he has suffered no damages cognizable under Rhode Island law. As a result, there is no reason for this case to proceed to trial. Summary judgment in favor of PNC is warranted.

Dated: August 15, 2018

Respectfully submitted,

**PNC BANK, NATIONAL ASSOCIATION**

*/s/ Arthur F. Radke*
Arthur F. Radke, Admitted *Pro Hac Vice*
Brett Natarelli, Admitted *Pro Hac Vice*
Manatt, Phelps & Phillips, LLP
20 N. Clark Street
Suite 3300
Chicago, IL 60602
(312) 626-1813
aradke@manatt.com
bnatarelli@manatt.com

*/s/ Harris K. Weiner*
Harris K. Weiner (#3779)
Salter, McGowan, Sylvia & Leonard, Inc.
321 S Main Street
Suite 301
Providence, RI 02903
(401)274-0300
hweiner@smsllaw.com

## CERTIFICATE OF SERVICE

I, Harris K. Weiner, hereby certify that on August 15, 2018 a copy of the foregoing document, filed through the CM/ECF system, will be sent electronically to all counsel of record.

                                                    */s/ Harris K. Weiner*

Todd S. Dion, Esq. (#6852)
371 Broadway
Providence, RI 02909
401-353-1230 Phone
401-965-4131 Cell
401-353-1231 Fax
toddsdion@msn.com

320698867.5