UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

DAWARI DAN-HARRY, on behalf of :
himself and all others so similarly :
situated, :
    Plaintiff, :
 :
    v. : C.A. No. 17-136WES
 :
PNC BANK, N.A., :
    Defendant. :

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

    This putative class action now rests on Plaintiff Dawari Dan-Harry's only remaining claim[1] – that Defendant PNC Bank, National Association, ("PNC") breached the mortgage contract between Plaintiff and PNC by failing to comply with a regulation, 24 C.F.R. § 203.604, which requires that a mortgagee must arrange a face-to-face meeting with the mortgagor within three months after default, or, as relevant in this case, make a "reasonable effort" to arrange such a meeting. 24 C.F.R. § 203.604(b, d). The regulation was promulgated by the United States Department of Housing and Urban Development ("HUD") and was incorporated into Plaintiff's contractual relationship with PNC because the mortgage was insured by the Federal Housing Authority ("FHA").

    PNC has moved for summary judgment, arguing that Plaintiff's proffer fails to establish any material issue of disputed fact to overcome PNC's evidence that it made the requisite "reasonable effort" to arrange a face-to-face meeting by mailing a certified letter inviting Plaintiff to a face-to-face meeting and by setting up one trip to see Plaintiff at the mortgaged

---

[1] Plaintiff's other claims were dismissed at the Fed. R. Civ. P. 12(b)(6) phase. Dan-Harry v. PNC Bank, N.A., No. CV 17-136 WES, 2018 WL 1083581 (D.R.I. Feb. 27, 2018).

property. ECF No. 28. PNC also contends that the undisputed facts – Plaintiff's admitted lack of equity in the mortgaged property and inability to make payments at the time of default, combined with five years of default before foreclosure and six years of living in the mortgaged property without paying the mortgage or anything for use and occupancy – support judgment as a matter of law because Plaintiff has failed to show that the lack of a face-to-face meeting caused his claimed damages.

The motion has been referred to me for report and recommendation. 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, I recommend that the motion be granted based on the absence of a trial-worthy factual dispute affecting PNC's evidence, which establishes full compliance with the "reasonable effort" requirement in 24 C.F.R. § 203.604(d). I also recommend that the motion be granted because Plaintiff has failed to present evidence sufficient to establish that PNC's alleged breach caused his claimed damages.

I.  **BACKGROUND**[2]

On December 5, 2005, Plaintiff obtained a mortgage loan from PNC's predecessor, National City Bank of Indiana, to purchase a home at 84 Corinth Street in Providence ("the mortgaged property"). PNC SUF ¶ 1. In conjunction with that loan, Plaintiff executed a mortgage agreement and promissory note in the amount of $203,000. PNC SUF ¶ 2. Paragraph 9(d) of the mortgage incorporated by reference certain HUD regulations; it states as follows:

> **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

---

[2] These facts are drawn from the parties' statements of facts and supporting affidavits and declarations. Except where otherwise indicated, they are undisputed.

PNC SUF ¶ 5.  On December 31, 2008, PNC acquired National City Bank of Indiana and became the mortgagee.  PNC SUF ¶ 3.

Plaintiff failed to make a payment on the note when due in January 2012 and again in February 2012, resulting in his being in default under the mortgage.  PNC SUF ¶ 4.  In that circumstance, the applicable HUD regulation requires that, within three months, the mortgagee must either have a face-to-face meeting with the mortgagor or make a reasonable effort to arrange one.  The regulation states in relevant part as follows:

> (b) The mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid.
> . . .
> (d) A reasonable effort to arrange a face-to-face meeting with the mortgagor shall consist at a minimum of *one letter sent to the mortgagor* certified by the Postal Service as having been dispatched. Such a reasonable effort to arrange a face-to-face meeting shall also include at least *one trip to see the mortgagor* at the mortgaged property[.]

24 C.F.R. § 203.604 (emphasis added).  PNC has proffered two declarations signed by individuals familiar with the relevant procedures setting out its "regularly conducted business activity" of timely sending a certified letter and of using an experienced entity, J.M. Adjustment Services ("J.M."), to make a timely trip to the mortgaged property, both as efforts to arrange the face-to-face meeting; these declarations aver that both requirements were accomplished in this case.  Sexton Decl. ¶¶ 5, 8, 11, 12; Kojadulian Decl. ¶¶ 7, 8, 10, 14, 16, 17.

Authenticated as a business record by the declaration of PNC's Vice President Jean Sexton, PNC's Loan Activity Archive for the relevant period reflects that on February 27, 2012, a certified letter was sent to Plaintiff via the United States Postal Service ("USPS").  PNC SUF ¶

3

7; Sexton Decl. ¶¶ 7-12 & Ex. 2.[3] A copy of the letter with the USPS certification tracking number and bar code is appended to the Sexton declaration, which authenticates it as a business record and avers that PNC's records reflect that it was sent. Sexton Decl. ¶¶ 9-12 & Ex. 1. The letter invites Plaintiff to participate in a face-to-face meeting to discuss his mortgage and advises him that a representative from J.M. "will be coming to your home . . . in order to discuss solutions that may be available to you to bring your account current."[4] Sexton Decl. ¶ 10 & Ex. 1. PNC's business records also reflect that this attempt to reach Plaintiff was not made in isolation. Rather, between July 12, 2011, and March 30, 2012, PNC made repeated attempts to reach Plaintiff by telephone and its representatives actually spoke to "borrower" from time to time, both before and after the certified letter was sent. Sexton Decl. ¶ 7 & Ex. 2. During the window for the face-to-face meeting (January through March 2012), PNC's Loan Activity Archive reflects at least twenty attempts to reach Plaintiff by phone. Id.

Plaintiff meets PNC's proffer that a letter was sent certified by USPS advising Plaintiff of the face-to-face meeting with his sworn denial that he received the letter or that he was ever told of his right to have a face-to-face meeting. Dan-Harry Aff. ¶¶ 8, 10-11. He also relies on the declaration of his attorney, to which is appended a document represented to be a copy of the "tracking search results" that appeared when the USPS tracking number on the face-to-face

---

[3] In what appears to be a scrivener's error in paragraphs 7 and 10 of the Sexton declaration, the exhibit numbers are switched, in that these paragraphs refer to Exhibit 1 as 2 and Exhibit 2 as 1. To be clear, I refer to the copy of the letter as Exhibit 1 and the copy of PNC's Loan Activity Archive as Exhibit 2.

[4] In relevant part, the balance of the letter states:

> PNC Mortgage has contracted with J.M. Adjustment Services, LLC to coordinate with you and offer you the option to schedule a free face-to-face meeting with a J.M. Adjustment Services, LLC representative at your home to discuss solutions that may be available to bring your account back to a current status. The purpose of this meeting would be to discuss ways to cure the delinquency or qualify you for an option to bring your account current over a period of time.

Sexton Decl. ¶ 10 & Ex. 1.

4

meeting letter was entered by an unknown person[5] on an undisclosed date into a USPS website portal; this document states "Label Created, not yet in system." Dion Decl. ¶ 3 & Ex. 1. The Dion declaration does not describe USPS procedures with respect to tracking of an item mailed over six years ago or what this "tracking search result" might mean. PNC's attorney counters the declaration of Plaintiff's attorney with his own representation that accessing the same USPS website portal to view the "FAQ" that are referenced on the face of the USPS document relied on by Plaintiff establishes that "letters can only be currently tracked with the program for 120 days." ECF No. 40 at 3 n.1. Notwithstanding so many ambiguities, Plaintiff argues that his denial that he received the February 27, 2012, face-to-face meeting letter, coupled with this document downloaded from the USPS website, are enough to give rise to a trial-worthy inference that the certified letter was never sent.

With respect to the mortgagee's obligation to make a trip to the mortgaged property, PNC relies on the declaration of Ryan Kojadulian, the Compliance Manager of J.M., who avers that J.M. was engaged by PNC to provide borrower outreach services. Kojadulian Decl. ¶ 4. The declaration authenticates J.M.'s business record establishing that its employee, Jayson Williams (who worked at J.M. from 2011 until 2015) visited the mortgaged property on March 4, 2012, but found no one at home. Kojadulian Decl. ¶¶ 10-14. According to Williams' contemporaneously prepared "Field Visit Results," he spoke to a neighbor, who declined to provide any information, and left taped to the door a letter to Plaintiff in a sealed confidential envelope labeled with Plaintiff's name. Kojadulian Decl. ¶ 10 & Ex. 1. The letter advised Plaintiff that it was important that he contact PNC immediately but it does not mention the face-to-face meeting. Id. Ex. 2. Plaintiff avers only that he never received a letter advising him of a

---

[5] The declaration simply states that the attached document is the "tracking search results from the USPS website tracking tool[.]" Dion Decl. ¶ 3.

face-to-face meeting. PNC SUF ¶ 8; see Dan-Harry SDF ¶ 8 (disputing only to extent that J.M.'s trip did not cause Plaintiff to become aware of face-to-face meeting). Plaintiff does not deny that J.M.'s employee made a trip to the mortgaged property on March 4, 2012, as described in the Kojadulian declaration.

While Plaintiff denies that he was made aware of the availability of a face-to-face meeting, he does not dispute PNC's repeated attempts to reach him by phone during the three-month period. Rather, he avers that, if he had known of his eligibility for a face-to-face meeting and if he had been "given instructions on what to do or an agreement could have been met" within the three-month period, he could have "displayed his financial information" and asked for a loss litigation option or loan modification to bring his mortgage into good standing, which would have been easier soon after the mortgage first went unpaid. Dan-Harry Aff. ¶¶ 12-13. Later, as the unpaid balance grew, these options became "more difficult." Id. Nevertheless, Plaintiff also admits that, as of March 1, 2012, he believed he owed more than what the mortgaged property was then worth, a belief that is confirmed in a letter he admits he wrote on August 12, 2012. Radke Decl. ¶ 5 & Ex. 2 (RFA ¶¶ 12, 22). Nor does he dispute that he had no equity in the mortgaged property at the time he defaulted. PNC SUF ¶ 12.[6] Plaintiff also provides no evidence permitting the inference that, during the three-month period (or at any time after he first defaulted in January 2012), he had the willingness and ability to bring the mortgage current; nor does he dispute that he lacked the funds to make mortgage payments at the time of default. Id.

---

[6] Plaintiff's response to this pivotal fact disputes only the assertion that his non-monetary damages are limited to "stress" in that he considers the loss of his home to be part of his claimed damages. Dan-Harry SDF ¶ 12. Otherwise, ¶ 12 is undisputed.

6

After the mandatory three-month window for the face-to-face meeting closed, it is undisputed that Plaintiff requested a loan modification based on the property's decreased value and his income but the parties failed to agree on a modification for the mortgage or on a short sale. PNC SUF ¶ 9. In his affidavit, Plaintiff avers that the delay has caused him to lose his home in that he believes that he "would have worked out something to sell my house." Dan-Harry Aff. ¶ 14. The delay also caused him to incur late charges, interest, fees and penalties and resulted in an increase in the escrow balance. Id. Plaintiff made his last payment in December 2011 and has occupied the residence from then until now without paying the mortgage or anything for use and occupancy, at the same time that PNC has paid the taxes and insurance. Sexton Decl. ¶ 14. PNC did not complete the foreclosure and sale of the mortgaged property until January 23, 2017. PNC SUF ¶ 11. Throughout, Plaintiff has continued to occupy the property as his primary residence. ECF No. 1-1 at ¶ 41.

## II. STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, summary judgment is appropriate if the pleadings, the discovery, disclosure materials and declarations show that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Taylor v. Am. Chemistry Council, 576 F.3d 16, 24 (1st Cir. 2009); Commercial Union Ins. Co. v. Pesante, 459 F.3d 34, 37 (1st Cir. 2006) (quoting Fed. R. Civ. P. 56(c)). A fact is material only if it possesses the capacity to sway the outcome of the litigation; a dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. Estrada v. Rhode Island, 594 F.3d 56, 62 (1st Cir. 2010); Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). The evidence must be in a form that permits the court to conclude that it will be

7

admissible at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  In ruling on a motion for summary judgment, the court must examine the record evidence "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party."  Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000) (citing Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 672 (1st Cir. 1996)).  There are no trial-worthy issues unless there is competent evidence to enable a finding favorable to the nonmoving party. Goldman v. First Nat'l Bank of Bos., 985 F.2d 1113, 1116 (1st Cir. 1993).  That is, the nonmoving party cannot rest on its pleadings, but must "set forth specific facts demonstrating that there is a genuine issue for trial" as to the claim that is the subject of the summary judgment motion.  Oliver v. Digital Equip. Corp., 846 F.2d 103, 105 (1st Cir. 1988).

## III.  LAW AND ANALYSIS

### A.  Reasonable Effort to Arrange Face-to-Face Meeting

Section 203.604 requires a mortgagee either to have a face-to-face meeting with the mortgagor, or make a reasonable effort to arrange such a meeting prior to proceeding with foreclosure.  24 C.F.R. § 203.604(b).  A face-to-face meeting is not required if a reasonable effort to arrange the meeting is unsuccessful.  24 C.F.R. § 203.604(c)(5).  A reasonable effort to arrange such a meeting "shall consist at the minimum of one letter sent to the mortgagor certified by the Postal Service as having been dispatched," as well as "at least one trip to see the mortgagor at the mortgaged property" unless certain exceptions not applicable here exist.  24 C.F.R. § 203.604(d); see generally Grimaldi v. US Bank Nat'l Ass'n for LSF9 Master Participation Tr., C.A. No. 16-519 WES, 2018 WL 1997277, at *3 (D.R.I. Apr. 27, 2018); Countrywide Home Loans, Inc. v. Wilkerson, No. 03 C 50391, 2004 WL 539983, at *1 (N.D. Ill. Mar. 12, 2004).

To prove compliance with § 203.604(d), the mortgagee may rely on "proof of a business system of preparing and mailing letters, and compliance with such a custom in the particular instance," coupled with a copy of the business letter coded with internal identification numbers, names, and descriptions. Underwood v. Wells Fargo Home Mortg., Inc., No. 16-10226, 2016 WL 3182022, at *3 (E.D. Mich. June 8, 2016) (quoting Simpson v. Jefferson Standard Life Ins. Co., 465 F.2d 1320, 1324 (6th Cir. 1972)). Sworn testimony describing the ordinary practice of utilizing certified mail when sending the face-to-face meeting letters and "indicating that a certified letter was, in fact, sent" is enough for summary judgment in favor of the mortgagee. Campbell v. Wells Fargo Bank, N.A., No. 1:14-cv-03341TWTJFK, 2016 WL 6496458, at *8 (N.D. Ga. Oct. 6, 2016), adopted, No. 1:14-CV-3341-TWT, 2016 WL 6462070 (N.D. Ga. Nov. 1, 2016). Application of these principles to the facts here compels the conclusion that PNC has presented competent evidence to prove that it both sent a timely certified letter and deputized a representative to make one trip to the mortgaged property. PNC's declarations from its Vice President and J.M. establish its business practice of complying with § 203.604(d), as well as that it complied with it usual practices in this instance. Such evidence is sufficient to sustain PNC's burden.[7] See RBS Citizens NA v. Sharp, No. 17 MA 0059, 2018 WL 3147976, at * 4 (Ohio Ct. App. June 22, 2018) (mortgagee's proffer of copy of timely letter with "evidence that said letter was sent via certified mail," coupled with evidence that representative was sent to mortgagor's home, enough for summary judgment in mortgagee's favor).

---

[7] No case supports Plaintiff's contention that business practice evidence is insufficient and summary judgment is improper unless the mortgagee can present sworn testimony from persons with first-hand knowledge able to remember that a particular certified letter was actually placed in the mail and able to describe the trip to the mortgaged property. As a practical matter, if such a requirement were adopted, virtually all § 203.604(d) cases would go to trial. I decline to adopt such an approach.

Offered to rebut this evidence, Plaintiff's denial that he got the certified letter is legally insufficient. A mortgagor's denial of having received the letter does not give rise to a factual dispute regarding the mortgagee's compliance with the requirement to send it. Campbell, 2016 WL 6496458, at *8 (granting summary judgment despite plaintiff's averment that she never received certified letter; "there is no express requirement under the regulation that Defendant guarantee a mortgagor's *receipt*") (emphasis in original). Similarly, the proffer in Plaintiff's attorney declaration of August 8, 2018, of an unexplained document from the USPS website proves nothing. Without some cognizable evidence to authenticate the document and explain the meaning of "Label created, not yet in system," particularly where the time when the inquiry was made and the person who made it are both unknown, this document does not amount to admissible evidence permitting the inference that PNC's certified letter was not sent on February 28, 2012.[8] Cf. Whitfield v. Walker, No. 04-3136, 2006 WL 2644939, at *10 (C.D. Ill. Sept. 14, 2006) (unexplained proffer of USPS Postal Tracking record that shows two unidentified items not found does not amount to proof that anyone stole or tampered with mail).

Plaintiff attacks the adequacy of J.M.'s undisputed trip to the mortgaged property by arguing that it fails to meet the trip requirement in § 203.604(d) because there is no evidence that Mr. Williams had the authority actually to conduct a face-to-face meeting on the spot and because the letter he left did not mention a face-to-face meeting. This argument is also unavailing. Section 203.604(d) requires only that the mortgagee must "include at least one trip to see the mortgagor at the mortgaged property" as part of its "reasonable effort to arrange a

---

[8] Equally inadmissible is PNC's attorney's counter to Plaintiff's attorney, which points out that the page attached to the Dion declaration comes from a tracking portal that retains delivery status information only for four months. If the Court were drawn into considering these dueling representations of counsel, an invitation which I have declined, it must conclude that the proffered "tracking search results" are meaningless unless they were generated in the period between February 27, 2012, and April 26, 2012. And there is nothing in the Dion declaration permitting the inference that they were.

face-to-face meeting." Id. (emphasis added). The regulation does not require that the person who makes the trip must be in possession of all of the information and authority necessary to be fully prepared to conduct a complete face-to-face meeting. Nor does it mandate that a letter discussing the face-to-face meeting must be left if the mortgagor is not home. Plaintiff's argument to the contrary misses the mark because he relies on cases that do not address the sufficiency of a timely reasonable effort to arrange the meeting by making a trip to the property.

For example, Plaintiff points to Freedom Mortgage Corp. v. Newsome, Docket No. 12-SP-2461, slip op. (Mass. Housing Ct. Dept. Sept. 1, 2017),[9] in which the mortgagee neither sent a timely certified letter nor made a timely trip to mortgaged property for arranging a face-to-face meeting. Rejecting the mortgagee's argument that its failures should be overlooked because there were other trips to the borrower's home, the Massachusetts housing court held that an untimely visit by a representative who lacked the authority to propose or accept a payment plan was not an adequate substitute for compliance. Id. at 2 ¶ 7, 6 ¶¶ 20-21. Freedom Mortgage does not stand for the proposition that compliance with the timely trip requirement of § 203.604(d) requires that the representative who makes the trip must be prepared to conduct the face-to-face meeting on the spot. And if Freedom Mortgage somehow may fairly be read as supporting such a proposition, that holding would be error as it ignores the clear language of § 203.604(d), which states that the trip is "to arrange" the meeting, not to conduct it in the moment.

Plaintiff's reliance on Wells Fargo Bank, N.A. v. Cook, 31 N.E.3d 1125 (Mass. App. Ct. 2015), is equally misplaced. Like Freedom Mortgage, Cook does not consider the adequacy of a timely trip to the mortgage property. Rather, it holds that a mortgagee cannot avoid the consequences of its failure to comply with § 203.604(d) by claiming that it did conduct a face-to-

---

[9] This unpublished opinion is in the record at ECF No. 39-2.

11

face meeting by setting up a mass event with defaulted borrowers at Gillette Stadium that was untimely and at which no "personalized consideration" of the mortgagors took place. Id. at 1129-31. Further, to the extent that Cook has been considered by other courts (albeit not in the context of evaluating the sufficiency of a trip to the mortgaged property), its holding has been limited to its unique facts. Ruzicka v. JPMorgan Chase Bank, N.A., No. CV 15-2432 (JSM), 2016 WL 10637081, at *7-8 (D. Minn. Dec. 7, 2016), aff'd, 705 F. App'x 473 (8th Cir. 2017) (granting summary judgment because brief, but timely, meeting with bank representative with disputed authority to propose or accept repayment plan is sufficient to constitute face-to-face meeting).

Based on the foregoing, I find that the material undisputed facts establish that PNC complied fully with the § 203.604(d) "reasonable effort" requirement and that there was no breach of its contractual duty to Plaintiff to do so. In reliance on that finding, I recommend that the Court grant summary judgment in favor of PNC.

### B. Sufficiency of Plaintiff's Proof of Damages

While the analysis could end with Plaintiff's failure to present trial-worthy evidence to combat PNC's proof of compliance with § 203.604(d), I also find that Plaintiff's claim must fail because he has no proof permitting the inference that his damages – the fees, interest and penalties that accumulated as the mortgage remained unpaid, as well as the loss of his home to foreclosure after five years in default – were caused by an alleged breach of the face-to-face meeting requirement.

The starting point for the analysis is the foundational principle that a plaintiff must not only prove the existence and breach of a contract, but also must prove that the breach caused him damage. Petrarca v. Fidelity and Casualty Ins. Co., 884 A.2d 406, 410 (R.I. 2005). In the

context of face-to-face meeting breach-of-contract cases, unless there is proof of equity in the property and the ability to bring the mortgage current during the pertinent time period, courts deploy this principle to hold that "the foreclosure was due to [the plaintiff's] default in [his] . . . mortgage loan," and reject as "completely speculative and frankly irrelevant," the assertion that "the plaintiff would have received a loan modification and avoided foreclosure if a face-to-face meeting had occurred. Aazami v. Wells Fargo Bank, N.A., 3:17-CV-01564-BR, 2018 WL 738930, at *6 (D. Or. Feb. 6, 2018) ("[c]ourts in similar circumstances have held that plaintiffs failed to support their breach-of-contract claims") (citing Wright v. Wells Fargo Bank, N.A., No. 1:15-cv-02416-AT-JCF, 2015 WL 12159206, *5 (N.D. Ga. Oct. 8, 2015); Njema v. Wells Fargo Bank, N.A., 124 F. Supp. 3d 852, 684 (D. Minn. 2015)). The point is well illustrated by Covarrubias v. CitiMortgage, Inc., 623 F. App'x 592 (4th Cir. 2015) (per curiam), in which the grant of summary judgment was vacated based on concrete evidence of the plaintiff's "willingness and ability to bring the mortgage current had [the mortgagee] arranged a face-to-face meeting, and . . . a loss of equity as a direct result of foreclosure." Id. at 593-94; see Squire v. Va. Hous. Dev. Auth., 758 S.E.2d 55, 60-61 (Va. 2014) (loss of equity establishes that damage was caused by mortgagee's failure to send notice that was condition precedent to right to accelerate).

In this case, Plaintiff has admitted that, at the time he defaulted, he had no equity in the property and lacked the funds to make any mortgage payments. PNC SUF ¶ 12. He relies only on his own speculation for the proposition that a face-to-face meeting might have altered the course of events. See Dan-Harry Aff. ¶¶ 12-14. Thus, it is clear that this is a case in which Plaintiff's damages were caused by his failure to "tender a single payment for [five] years that caused [his] default status and the foreclosure[,]" and not by the lack of a face-to-face meeting.

Rourk v. Bank of Am. Nat'l Ass'n, No. 4:12-CV-42 (CDL), 2013 WL 5595964, at *6 (M.D. Ga. Oct. 11, 2013) (summary judgment granted because plaintiff "has not established that such a failure [of face-to-face meeting] caused her any damages."); see Ruzicka, 2016 WL 10637081, at *9 (any damages arising from foreclosure resulted from plaintiff's default, not from action by mortgagee). Plaintiff's push-back rests on an unpublished Massachusetts state court decision holding simply that a failure of a condition precedent renders a foreclosure void *ab initio*. See EverBank v. Chacon, 87 N.E.3d 116, 2017 WL 3198222, at *1 (Mass. App. Ct. 2017). However, EverBank arose in the context of foreclosure proceedings; it is not applicable to a breach of contract claim brought by a plaintiff who has no evidence of the essential element that the breach must result in damage. See Petrarca, 884 A.2d at 410.

Based on the foregoing, I recommend that summary judgment is appropriate based on Plaintiff's lack of proof of damages caused by the alleged breach.

## IV. CONCLUSION

For the reasons set forth above, I recommend that PNC's Motion for Summary Judgment (ECF No. 28) be granted.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Diaz-Rosado, 857 F.3d 89, 94 (1st Cir. 2017); Davet v. Maccarone, 973 F.2d 22, 31 (1st Cir. 1992).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
October 17, 2018